COMMUNIST PARTY et al., Plaintiffs,

v.

Richard AUSTIN, Individually and as Secretary of State of the State of Michigan; Bernard J. Apol, Individually and as Director of Elections and Secretary of the Board of Canvassers of the State of Michigan, Defendants.

Civ. A. No. 39798.

United States District Court,
E. D. Michigan, S. D.

July 17, 1973.

Richard Soble, Goodman, Eden, Millender, Goodman & Bedrosian, Detroit, Mich., for plaintiffs.

Charles D. Hackney, Asst. Atty. Gen., Lansing, Mich., for defendants.

Before O'SULLIVAN, Senior Circuit Judge, THORNTON, Senior District Judge, and DeMASCIO, District Judge.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The Michigan Election Code grants automatic ballot status to any political party whose "principal candidate" receives 1% of the total vote cast for the successful candidate for the Office of Secretary of State. This provision is set forth in Section 685 of the Michigan Election Code, M.C.L.A. § 168.685 and in pertinent part states:

"No political party, the *principal candidate of which shall* have received a vote equal to less than 1% of the total number of votes cast for the successful candidate for the office of secretary of state at the last preceding election in which a secretary of state was elected shall have the name of any candidate printed on the ballots at the next ensuing election, nor shall a column be provided on the ballots for such party. Any party so disqualified may again qualify and have the names of its candidates printed in a separate party column on each election ballot in the manner set forth in the first paragraph of this section for the qualification of new parties. *The term 'principal candidate' of any party shall be construed to mean the candidate whose name shall appear nearest the top of the party column."* (Emphasis added.)

The plaintiff, Communist Party, qualified for ballot position in the November 1972 election by filing petitions bearing sufficient signatures with the Board of Canvassers as required by the relevant statute.[1] In that election, the Communist Party offered candidates for national as well as state-wide offices.[2] Plaintiff Goldman was the Communist Party's candidate for the Board of Governors of Wayne State University. She received 14,993 votes. This amount exceeded 1% of the total votes cast for the successful candidate for the Office of Secretary of State.[3] However, the Communist Party's "principal candidate" who ran for the Office of President did not receive the requisite 1% vote.

The Conservative Party of Michigan, like plaintiffs, qualified for ballot status in the November 1972 general election by filing sufficient petitions. But, unlike the plaintiffs, the Conservative Party elected to run candidates for only state-wide offices. Its "principal candidate" ran for the State Board of Education. The Conservative Party's "principal candidate" received more than the requisite 1% of the total votes cast for the Secretary of State.[4]

The Conservative Party, because of the vote received by its "principal candidate" re-qualified for continuing ballot status. The Communist Party's "principal candidate" did not. As a consequence of this unique result, the plaintiffs filed this action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 requesting that we declare Section 685 unconstitutional because it is discriminatory and arbitrarily denies plaintiffs their Fourteenth Amendment

---

1. The provision setting forth the petition requirements for candidates of new political parties who wish to have their name printed on the ballot was challenged in Socialist Workers Party v. Hare, 304 F.Supp. 534 (E.D.Mich.1969). Although we are not required to consider this section, we doubt whether the decision granting the injunction would withstand the analysis of later decisions. Zautra v. Miller, 348 F.Supp. 847 (D.C.Utah, 1972) ; Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) ; Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

2. The Communist Party's candidates for President and Vice President received 1,210 votes from a total of 3,489,727 cast for those offices.

3. Defendant Richard Austin was the successful candidate for Secretary of State in that election and received 1,423,801 votes. The 1% requirement equals 14,238 votes.

4. Conservative Party's candidate Peter Mc-Alpine received 16,575 votes for the Board of Governors at Wayne State University ; James Wells received 16,060 votes for the State Board of Education.

rights to equal protection of the law and due process of law.[5]

The plaintiffs do not challenge the State's interest in requiring a political party to demonstrate a significant modicum of support in order to qualify for ballot status. Jenness v. Fortson, 403 U.S. 431, 442, 91 S.Ct. 1970 (1971). That interest includes regulating the number of candidates on the ballot and deterring fraudulent and frivolous candidacies. And the plaintiffs concede that a State may take appropriate action to protect these interests. In Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 857 (1972) the court stated:

> "The Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot. Jenness v. Fortson, 403 U.S., at 442 [91 S.Ct. 1970, at 1976;] Williams v. Rhodes, 393 U.S. [23], at 32 [89 S.Ct. 5, 21 L.Ed.2d 24]. In so doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of run-off elections. . . . Moreover, *a state has an interest, if not a duty, to protect the integrity of its political processes* from frivolous or fraudulent candidacies. Jenness v. Fortson, 403 U.S. at 442, [91 S.Ct., at 1976]." (Emphasis added.)

We also think the State has further interests in requiring political parties to demonstrate that its support is continuing after qualifying in the first instance; that the support is reasonably distributed rather than confined to particularized locales; and that it is not focused on a particular personality or confined to issues or causes associated with a specific office for which a political party or candidate may wish to run.

The plaintiffs, however, urge that even though the State may have such interests, the "principal candidate" requirement is an arbitrary provision which does not further any of them. We disagree. We find that Michigan's "principal candidate" requirement furthers the State's interest in deterring frivolous and fraudulent candidates and in further assuring that a political party has a significant modicum of support.

The State has apparently determined that political offices attracting the greatest possible interest appear nearer the top of the ballot. It is here that the impact of frivolous candidates is the greatest and the need for deterrents most essential. Moreover, the "principal candidate" provision is well designed to eliminate temptations for political parties to advance candidates whose function it is to give the impression that the party has greater strength and diversification than it really has or to create confusion among other bona fide candidates for other parties.[6] The "principal candidate" requirement has the tendency to deter fraudulent and frivolous candidates throughout the ballot and it most assuredly requires a party to ascertain whether it indeed has a modicum of support in the offices of greatest voter concern.

The plaintiffs hypothesize possible results to demonstrate that this requirement fails to achieve any of these interests. The plaintiffs reason, for example, that a political party that nominates a "principal candidate" who succeeds in achieving the requisite 1% of the votes

---

5. Plaintiffs' action is filed pursuant to 42 U.S.C. § 1983. Upon plaintiffs' application, a three-judge court was constituted pursuant to 28 U.S.C. §§ 2281, 2284 because plaintiffs seek injunctive relief to enjoin enforcement and application of a state statute.

6. Confusion in identity of candidates bearing the same or similar names is a familiar problem in Michigan politics well known to the legislature. Identifying labels often do not eliminate that confusion. See Sullivan v. Secretary of State, 373 Mich. 627, 130 N.W.2d 392 (1964); Evans v. Detroit Election Commission, 381 Mich. 382, 162 N.W.2d 141 (1968).

automatically insures the party's continuing ballot position regardless of the fraudulent or frivolous character of the candidates for lesser offices. From this possible result, plaintiffs argue that the "principal candidate" requirement does not succeed in deterring fraudulent or frivolous candidates for lower offices.

On the other hand, a political party could run a number of candidates with all except the "principal candidate" successful in achieving the necessary 1% of the votes. In this instance, the party would fail to requalify for ballot status even though all candidates other than the "principal candidate" made sufficient showings. Plaintiffs also argue that this result arbitrarily disregards the success of other party candidates and point out that a party that chooses to run in higher, more difficult races may fail to automatically requalify even though its candidates in lower offices do as well as or better than those of another party.

Because of these possible resulting disparities, plaintiffs argue that the "principal candidate" provision is arbitrary and discriminatory; and without satisfying any valid state interest, this provision merely burdens the party which falls into the latter example with the onerous burden of re-petitioning for ballot position.[7]

■■ A state is not required to devise a statutory scheme for access to the ballot that provides perfect equality under all contingencies, at all times. Rather, to determine " . . . whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to

be protecting, and the interests of those who are disadvantaged by the classification." Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10 (1968); Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). The Michigan Election Code permits a political party to decide which offices to seek and requires that a party seeking automatic ballot status do no more than determine the highest office in which it has a modicum of support and run no candidate for higher office. If the party misjudges its strength, or for any other reason runs its "principal candidate" for an office in which it cannot obtain the requisite support, the party forfeits automatic re-qualification. But, a party is never foreclosed from obtaining ballot status. It may always regain its ballot position by re-qualifying as if it were a new party in the first instance.[8] Requiring a party to qualify by means of collecting petitions is not a denial of equal protection. In Jenness v. Fortson, supra, 403 at 440, 91 S.Ct. at 1975 the court said:

"The fact is, of course, that from the point of view of one who aspires to elective public office in Georgia, alternative routes are available to getting his name printed on the ballot. He may enter the primary of a political party, or he may circulate nominating petitions either as an independent candidate or under the sponsorship of a political organization. *We cannot see how Georgia has violated the Equal Protection Clause of the Fourteenth Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other.*" (Emphasis added.)[9]

_____

7. Michigan is among the 42 states that require petitions equaling 1% or less. Williams v. Rhodes, 393 U.S. 23, 47, 89 S.Ct. 5 fn. 10.

8. Michigan does not impose onerous primary requirements upon a new political party. A political party whose "principal candidate" receives less than 5% of the vote cast for the Office of Secretary of State may nominate candidates for office

by party caucus or convention and therefore are in a better position to control which candidate will seek specific offices. Major parties, on the other hand, must nominate candidates for state offices by open primary. See M.C.L.A. §§ 168.532, 168.686a.

9. Under the Georgia law approved in *Jenness*, a political organization that obtains 20% of the vote at a prior election

The State neither denies equal protection of the law nor due process of law by concluding that when a party's "principal candidate" receives the requisite 1% it will also admit to the ballot those below that office even though some candidates may prove to be without meaningful support. The state does no more by this provision than further assure ready access to the ballot.

When plaintiffs and the Conservative Party qualified for the 1972 ballot by filing the necessary signatures, the provision in question applied equally to each of them and to all other parties, new or old. The fact that only the Conservative Party is entitled to the advantage of the "principal candidate" provision for automatic ballot status, and the Communist Party is not, does not compel a finding of constitutional infringement. After the parties qualified in the first instance, they were no longer in the same or similar circumstances. The disparity resulted because the plaintiff Communist Party voluntarily decided to run its "principal candidate" for President, an office for which it could not muster a modicum of support. The Conservative Party selected offices nearer the bottom half of the ballot and represented that it had a modicum of support for those offices. Plaintiff Communist Party judged wrongly; the Conservative Party did not. It was this judgment by the Communist Party that placed plaintiff Goldman, their strongest candidate, in a position other than that of "princi-

pal candidate" and not this provision in the Election Code.

The plaintiff, Communist Party, argues that the election results have established that its candidate had a modicum of support for the same office as the Conservative Party candidate. The plaintiff continues that the "principal candidate" provision which requires it to repetition for ballot status places an unconstitutional burden upon the Communist Party. The plaintiff concludes that the state cannot come forth with a rational, let alone a compelling reason, for enforcing a provision causing such post-election distinctions.

 We accept plaintiffs' assertion that participation in the electoral process is a fundamental right and one that is constitutionally protected. We reject, however, plaintiffs' argument that the "principal candidate" provision must therefore be reviewed with the close scrutiny required by the compelling state interest standard.[10] The compelling interest test is appropriate only where the governmental classification (1) is inherently suspect or (2) infringes on a fundamental right. The plaintiffs do not contend that this provision is inherently suspect. We agree that it is not. And we find the statutory provision here in issue does not unconstitutionally infringe plaintiffs' fundamental right to ballot status because it does not bar the Communist Party from the ballot in the next election. Plaintiffs need only file the necessary

becomes a political party with its attendant ballot position rights and primary election obligations. Any political party that obtains less than 20% of the vote becomes a political body with a right to ballot status by obtaining nominating petitions equal to 5% of registered voters at the last general election for the office in question. In Michigan, there is no such distinction between political parties and political bodies. All that is required is that the "principal candidate" receive 1% of the vote cast for the successful candidate for Secretary of State. Failing this, the political party need only acquire petitions equal to 1% of registered voters

casting ballots for the Office of Secretary of State.

10. The cases relied upon by the plaintiffs to support use of the compelling interest standard are clearly distinguishable. In Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, Tennessee's durational resident requirement totally disenfranchised newly arrived residents. In Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) and Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) residents who were not property owners were precluded from voting in school board elections and in bond elections respectively.

petitions. Although this task is somewhat more burdensome than automatic requalification, it is not so great a burden as to have ". . . a real and appreciable impact on the exercise of the franchise. . . ." *Bullock v. Carter, supra,* 405 U.S. at p. 144, 92 S.Ct. at p. 856. Although the Supreme Court found that the Texas filing-fee scheme involved in *Bullock* had such an impact and should therefore be "closely scrutinized", the Court noted that ". . . not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." *id.* at p. 143, 92 S.Ct. at p. 856. We find that the "principal candidate" provision, viewed in conjunction with the interrelated provisions of the Michigan Election Code, constitutes at most an "incidental burden" and does not operate to cause an "invidious discrimination in violation of the Equal Protection Clause." [11]

We further reject plaintiffs' argument that the "principal candidate" provision cannot meet the rational basis test. Plaintiffs contend that the provision lacks a rational relationship to the State's interest in ridding an election ballot of fraudulent and frivolous candidates and parties which lack a modicum of support. Plaintiffs further contend that less drastic alternatives such as a 1% requirement for each office, could protect these interests without the objectionable results of this contested provision. We are persuaded to the contrary. The State's argument has been in part that the "principal candidate" provision is effective in eliminating frivolous candidates at the top of the ballot; that the candidates in those positions are most important to the electorate; and that allowing frivolous candidates at the top misrepresents a minor party's strength. Under these circumstances we find that the section is reasonably written to further legitimate State interests and that it does not, on its face or in application, deny plaintiffs due process or equal protection. Absent such constitutional defects we are unwilling to substitute our judgment for that of the Michigan Legislature which has, in our opinion, enacted a liberal and fair election code.

Judgment for the defendants.

11. In *Rosario v. Rockefeller, a recent Supreme Court case,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), the Court declined to apply the compelling state interest test where the New York Election Law in issue did not "absolutely disenfranchise the class to which the petitioners belong . . . ", but placed deadline restrictions upon registration which, under the facts, barred plaintiffs from voting in the primary election. The Court stated that ". . . if their plight can be characterized as disenfranchisement at all, it was not caused by [the election law] but [rather by plaintiffs'] own failure to take timely steps to effect their enrollment."