**COMMUNIST PARTY et al., Plaintiffs,**

**v.**

**Richard AUSTIN, Individually and as Secretary of State of the State of Michigan, and Bernard J. Apol, Individually and as Director of Elections and Secretary of the Board of Canvassers of the State of Michigan, Defendants.**

**Civ. No. 39798.**

United States District Court,
E. D. Michigan, S. D.

Sept. 6, 1974.

---

Richard Soble, Goodman, Eden, Millender, Goodman & Bedrosian, Detroit, Mich., for plaintiffs.

Charles D. Hackney, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM AND ORDER

Before O'SULLIVAN, Senior Circuit Judge, THORNTON, Senior District Judge, and DeMASCIO, District Judge.

DeMASCIO, District Judge.

The Michigan Election Code [M.C.L.A. § 168.685] provides that a new or mi-nor political party may obtain ballot position by filing petitions bearing the signatures of qualified electors equal to 1% of the total vote cast for the successful candidate for Secretary of State. Having thus obtained ballot status, Michigan law further provides that when the "principal candidate" of such new or minor political party receives a vote equal to 1% of the vote cast in that election for the successful Secretary of State candidate, that party qualifies for continuing ballot status.[1]

We now re-visit our prior consideration of this provision for continuing ballot status in light of American Party of Texas v. White, Secretary of State of Texas, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (Decided March 26, 1974). The plaintiffs continue to contend that this provision invidiously discriminates between political parties and is thus violative of their First and Fourteenth Amendment guarantees.

In our original disposition of plaintiffs' complaint, a three-judge court unanimously found Sec. 168.685 valid and constitutional.[2] Upon stipulated facts, briefs and oral argument, we specifically found that a state has a legitimate interest in requiring that a political party demonstrate a significant modicum of support before qualifying for ballot status and the state's further interest in regulating the number of candidates on the ballot to avoid voter confusion. Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). We also found these interests included requiring a political party to demonstrate continuing support after its initial qualification; that its support is reasonably distributed and not confined

1. In pertinent part Sec. 168.685 of the Michigan Election Code provides:

"No political party, the *principal candidate of which shall* have received a vote equal to less than 1% of the total number of votes cast for the successful candidate for the office of secretary of state at the last preceding election in which a secretary of state was elected shall have the name of any candidate printed on the ballots at the next ensuing election, nor shall a column be provided on the ballots for such party. Any party so disqualified may again qualify and have the names of its candidates printed in a separate party column on each election ballot in the manner set forth in the first paragraph of this section for the qualification of new parties. The term *'principal candidate' of any party shall be construed to mean the candidate whose name shall appear nearest the top of the party column.*" (Emphasis added.)

2. 362 F.Supp. 27 (D.C.1973).

to particularized locales; that its support was not dependent upon a particular personality or a specific issue; that its candidates were not frivolous or fraudulent. We then concluded that Michigan's "principal candidate" provision furthered these state interests without creating more than an incidental burden on the exercise of voting rights. We rejected plaintiffs' argument that this provision must be reviewed with the close scrutiny required by the "compelling state interest" standard. Rather, we found that the "principal candidate" classification need only bear a rational relationship to the interests the state claimed to be protecting.

The Supreme Court's opinion in American Party of Texas v. White, supra, is dispositive of plaintiffs' contentions.[3] The Supreme Court held that a state has a compelling interest in regulating its electoral process.[4] Further, the court agreed that the limitations contained in the Texas Election Code ". . . whether considered alone or in combination, are constitutionally valid measures, reasonably taken in pursuit of vital state objectives that cannot be served equally well in significantly less burdensome ways." (415 U. S. at p. 781, 94 S.Ct. at p. 1306.)

The plaintiffs now contend that a hearing is necessary at which the state must demonstrate that its "principal candidate" provision is necessary to further a compelling state interest and that this interest cannot be served in a significantly less burdensome way. We think the plaintiffs' first contention that the court must conduct further hearings is without merit. In its briefs and at oral argument, the state has insisted that the "principal candidate" provision was necessary to further its vital interest in protecting its political process. The state has always argued that it had a vital interest in regulating the number of candidates on the ballot to avoid voter confusion and in further requiring that minor political parties demonstrate a significantly measurable amount of community support. The state has consistently asserted such interests as justification for the limitations imposed by the challenged provision although such interests were not specifically found by this court to be compelling. In light of American Party of Texas v. White, supra, we can now, without more, explicitly find such interests to be compelling.

We are further persuaded that the state has adequately demonstrated that its compelling state interests cannot be

---

3. Texas provides three methods for obtaining ballot position. First, those political parties whose gubernatorial candidate polled more than 200,000 votes in the prior general election must nominate candidates by primary election only and the nominees of these parties automatically appear on the ballot (Texas Election Code, Art. 13.02, V.A.T.S.). Second, when the party's gubernatorial candidate receives less than 200,000 votes but more than 2% of the total vote cast in the last general election, that party may nominate by either primary election or nominating conventions, and similarly receive automatic ballot status (Texas Election Code, Art. 13.45(1)). Third, when a party cannot qualify under either the first or second method it may nominate candidates in precinct conventions, but the party must evidence support by a number of notarized signatures equal to 1% of the total gubernatorial vote cast in the last election and if necessary by supplemental petitions circulated and filed 55 days after primary elections (Texas Election Code, Art. 13.45(2)). The

American Party challenged the third method contending it placed an impermissible burden on the exercise of its First and Fourteenth Amendment rights and invidiously discriminated between new and minor political parties. The court found these limitations constitutionally valid.

4. The District Court held that the challenged provisions of the Texas Election Code served a compelling state interest and did not deny adequate access to the ballot. Raza Unida Party v. Bullock, 349 F.Supp. 1272 (W.D.Texas, 1972). On appeal, the Supreme Court agreed stating:

". . . whether the qualifications for ballot position are viewed as substantial burdens on the right to associate or as discriminations against parties not polling 2% of the last election vote, their validity depend upon whether they are necessary to further compelling state interest, Storer v. Brown." (415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 714, Decided March 26, 1974.)

furthered in "a significantly less burdensome way" thus satisfying the second prong of the test advanced in *American Party of Texas*.[5] The plaintiffs have advanced one suggestion as a less drastic means for the state to accomplish its desired results. Plaintiffs argue that whether the "principal candidate" or any other state-wide candidate receives the requisite number of votes, the political party will have demonstrated the same type of support. The state, however, urges that its interest in eliminating frivolous and fraudulent candidates from offices positioned nearer the top of the ballot is most compelling. The state has determined that candidates for high political office attract the greatest public interest and that it is here where the need to discourage frivolous candidates is most essential. The "principal candidate" provision is well designed to correct this evil. Further, it discourages the temptation for minor parties to run frivolous candidates for high offices to give the appearance that the party's strength and its diversification are greater than they really are. The "principal candidate" provision serves to deter frivolous candidates throughout the ballot and requires the party to ascertain that it has community support in offices of greater voter interest. It is not for us to say that the evil the state seeks to control does not exist, nor are we persuaded that the statutory remedy devised is inappropriate to advance its interests. "The legislature may recognize degrees of evil and adapt its legislation accordingly." Packer

Corporation v. Utah, 285 U.S. 105, 110, 52 S.Ct. 273, 275, 76 L.Ed. 643 (1932).

The plaintiffs concede [6] and American Party of Texas v. White, *supra*, has held that a state may constitutionally require a party to demonstrate community support before re-qualifying for ballot status. In Texas, a party must have a candidate for the office of governor and that candidate must poll 2% of the vote to retain ballot status. Failing this, the party must re-qualify. In Michigan, a political party is not required to run a candidate for a specified office in order to retain ballot status. Michigan permits the party to select the office which will be utilized as a gauge for measuring community support. By so doing, we think Michigan's provision is less burdensome than the Texas statute sustained in *American Party of Texas*. If a party in Michigan correctly judges the support of its "principal candidate", it is more likely to retain ballot status than under the Texas statute.

Finally, the plaintiffs again assert that Michigan's "principal candidate" provision invidiously discriminates between new and minor political parties. This argument is predicated upon the fact that the Conservative Party of Michigan's candidate for the Board of Governors of Wayne State University, like the Communist Party's candidate for that office, received more than the requisite 1% of the vote cast for the Secretary of State. The Conservative Party of Michigan qualified for continuing ballot position; the Communist Party did not. The reason for this appar-

---

5. In Michigan, a party initially gains ballot status by filing petitions bearing signatures of a number of registered voters equal to or greater than 1% of the vote cast for the successful candidate for secretary of state. That party then retains ballot status without filing additional petitions when its "principal candidate" polls a number of votes equal to 1% of the vote cast for the successful candidate for secretary of state. In the last election, the 1% requirement equaled 14,238 signatures. In Texas, the 1% requirement equaled 22,000 signatures. Texas also had a further requirement that signatures gathered on supplemental peti-

tions had to be from voters who had not voted in the general primary election which has a tendency to reduce the pool of available signers. The court held that the required measure of support " . . . falls within the outer boundaries of support the State may require before according political parties ballot position." (At p. 783, 94 S. Ct. at p. 1307) The ballot access provisions in Michigan are less onerous in terms of absolute numbers and pose a lesser burden on the exercise of First and Fourteenth Amendment freedoms.

6. Plaintiffs' reply brief, p. 3, May 11, 1973.

ent disparity in treatment is that the Conservative Party of Michigan elected to run candidates only for relatively minor state offices. Its "principal candidate" sought a seat on the State Board of Education and he received more than the requisite 1% of the vote. The Communist Party elected to run candidates for major national offices. Its principal candidate ran for the Office of President and did not receive the requisite 1% of the vote.[7] It was the difference in the magnitude of the office selected by each party that entitled only one to continuing ballot status. This statutory provision does not discriminate between parties who are in a similar position on election day. Any dissimilarity occurring after the election is attributable to the tactical decisions made by the parties when they initially qualified. The statute does, however, effectively serve to prevent a party having support in the race for a particular minor state office from parlaying that support into automatic ballot position for major state or national offices for which it has little or no support. The "principal candidate" provision effectively furthers the state's compelling interest in preserving the integrity of the ballot and regulating the number of candidates to avoid voter confusion. Michigan's statutory provision permits political parties to utilize their support to their best advantage and at the same time prevents them from running frivolous candidates for high political offices nearer the top of the ballot at a time when their support lies only in local or minor state offices. The "principal candidate" requirement is less burdensome than a requirement which predicates qualification for automatic ballot status upon a percentage of votes received for a specified candidate as was the case with the Texas statute under attack in American Party of Texas v. White. Accordingly, this court's order entered July 17, 1973, is affirmed.

7. We have already pointed out that the Communist Party candidates for President and Vice President received 1,210 votes from a total of 3,489,727 cast for those offices.

362 F.Supp. 27, footnote 2. Its candidates for those offices proved to be frivolous and the statute insignificantly burdens repetition of this result.