**Eugene McCARTHY et al., Plaintiffs,**

v.

**Richard H. AUSTIN, Secretary of State of Michigan, and Frank J. Kelley, Attorney General of Michigan, Defendants.**

**No. G 76–164.**

United States District Court,
W. D. Michigan, S. D.

Aug. 27, 1976.

Philip C. Dean, Kenneth A. Birch, Lansing, Mich., for plaintiffs.

Norbert G. Jaworski, Lansing, Mich., for defendants.

## OPINION AND ORDER

Before ENGEL, Circuit Judge, FOX, Chief Judge, and MILES, District Judge.

MILES, District Judge.

This action challenging the absence of a provision in Michigan's Election Laws[1] whereby an independent candidate for the Presidency of the United States may obtain a position on the general ballot, is before the Court on cross motions for summary judgment. The parties have stipulated that no issues of fact are in dispute and no need exists for the taking of testimony. The facts may be briefly summarized.

Eugene J. McCarthy is an announced and represents that he is an independent candidate for President of the United States in the November, 1976 general election. He is over thirty-five years of age, a native-born citizen and life-long resident of the United States, and a registered voter in the State of Minnesota, without party affiliation. Judy Chapman and Peter J. McInerney are residents and registered voters of the State of Michigan seeking to have their names placed on Michigan's general election ballot in November, 1976, as presidential electors for Eugene J. McCarthy. Jean Morciglio is a resident and registered voter of the State of Michigan seeking to vote for Mr. McCarthy as an independent candidate for President in the November, 1976 general election.

Richard H. Austin is the Secretary of State of Michigan and, in this capacity, responsible for supervising the certification of the ballot for the November, 1976 election. Frank J. Kelley is the Attorney General of the State of Michigan, one of whose functions is interpreting Michigan law for other state officials. Esther Waite, Nancy Chase, Wallace Riley and Jessie Dillard are members of the Michigan Board of State Canvassers, which body certifies or prohibits the certification of candidates and electors.

In pursuance of their objective of securing a position on the ballot for Mr. McCarthy and electors pledged to him, plaintiffs aver that petitions in support of the independent candidacy of Eugene J. McCarthy were circulated and tendered to the Board of State Canvassers and that a state convention was held at which Eugene J. McCarthy was nominated for President, Patricia P. Weymouth was nominated for Vice-President, and twenty-one electors were chosen.

It appears that on behalf of the Board of State Canvassers, Mr. Norman Berkowitz, Deputy Secretary of State of Michigan, requested an opinion of Attorney General Kelley as to whether the lack of a statutory provision permitting independent candidacies precluded the Board from certifying the name of such a candidate for a position on the general election ballot and whether the petitions and certificate filed in behalf of Mr. McCarthy substantially complied with the law of the State of Michigan with respect to the creation of a new political party. In a letter dated June 8, 1976, Attorney General Kelley replied that the election laws of Michigan require a candidate for the Presidency to be the candidate of a political party organized pursuant to 1954

1. M.C.L.A. § 168.1 et seq., M.S.A. § 6.1001 et seq.

P.A. 116, § 685; M.C.L.A. § 168.685; M.S.A. § 6.1685.[2] In accordance with this opinion, the Board of State Canvassers, at their meeting of June 8, 1976, approved by a vote of 4–0 a motion instructing its staff not to process the petitions filed on behalf of the independent candidacy of Eugene McCarthy, determining that the filings on behalf of Mr. McCarthy were not suitable to form a new political party, and declaring that the Board was without authority to certify the independent candidacy of Mr. McCarthy for the Presidency and, consequently, did not so certify it.

Plaintiffs allege that the provisions of M.C.L.A. § 168.685, as interpreted and enforced by defendants, infringe plaintiffs' first amendment rights to freedom of speech and association and their fourteenth amendment rights to due process and equal protection of the laws in that they prohibit the electoral consideration of Mr. McCarthy and his electors as independent candidates with no party affiliation. Plaintiffs also

---

2. As amended by 1976 P.A. 94, M.C.L.A. § 168.-685, M.S.A. § 6.1685 provides:

Sec. 685. (1) The name of a candidate of a new political party shall not be printed upon the official ballots of an election unless the chairman and secretary of the state central committee of the party * * * filed with the secretary of state, at least 3 months before the primary election, a certificate signed by them bearing the name of the party, and unless accompanying the certificate there was filed petitions bearing the signatures of registered and qualified electors equal to not less than 1% nor more than 4% of the number of votes, the successful candidate for secretary of state received at the last election in which a secretary of state was elected. The petitions shall be signed by at least 100 residents in each of at least 9 congressional districts of the state and not more than 35% of the minimum required number of the signatures may be resident electors of any 1 congressional district. All signatures appearing upon the petitions shall have been obtained within 6 months immediately preceding the date of filing. The validity and authenticity of the signatures may be determined in the same manner as provided for initiatory and referendary petitions in section 9 of article 2 of the state constitution of 1963. The petitions shall be in substantially the following form:

PETITION TO FORM NEW
POLITICAL PARTY

We, the undersigned, duly registered electors of the city, township of . . . . . . . . . . . . . county of . . . . . . . . . . state of Michigan, re-
(strike one)
siding at the places set opposite our names, hereby declare our intention to organize the . . . . . . . . . . party, and respectfully request the secretary of state, in accordance with section 685 of Act No. 116 of the Public Acts of 1954, as amended, to receive the certificate and vignette of our party, tendered herewith, for filing, and place the names of our candidates on the ballot at the . . . . . . . . . . . election.

Warning: Whoever knowingly signs petitions to organize more than 1 new state political party, signs a petition to organize a new state political party more than once or signs a name other than his own, is violating the provisions of the Michigan election law.
. . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . .

(2) The size of all organizing petitions shall be 8½ inches by 13 inches and shall be printed in the following type sizes: The words "petition to form new political party" and the name of the proposed political party shall be in 24-point boldface type; the word "warning" and the language contained therein shall be in 12-point boldface type.

(3) A political party, the principal candidate of which * * * received a vote equal to less than 1% of the total number of votes cast for the successful candidate for the office of secretary of state at the last preceding election in which a secretary of state was elected shall not have the name of any candidate printed on the ballots at the next ensuing election, nor shall a column be provided on the ballots for that party. A party so disqualified may again qualify and have the names of its candidates printed in a separate party column on each election ballot in the manner set forth in subsection (1) for the qualification of new parties. The term "principal candidate" of any party * * * means the candidate whose name shall appear nearest the top of the party column.

(4) A political party which complied with this section is subject to section 560b[1] in

[1] M.C.L.A. § 168.560b.

order to have the name of that party, its vignette, and its candidates appear on the general election ballot.

Ordered to take immediate effect.
Approved April 22, 1976.

assert that the enforcement of M.C.L.A. § 168.685 will deny the voter-plaintiffs their fundamental right to vote for the candidates of their choice, including non-partisan candidates.

Claiming that they will suffer irreparable harm from the denial of these constitutional protections if there is no consideration of independent candidates for President and presidential electors during the November, 1976 general election and future elections, plaintiffs seek preliminary and permanent injunctive relief enjoining defendants, their successors, agents, and employees from enforcing the portion of M.C.L.A. § 168.685 which prohibits electoral consideration of independent candidates for President and presidential elector. They also seek a declaration that M.C.L.A. § 168.685 is unconstitutional to the extent that it prohibits electoral consideration of independent candidacies for President and presidential electors and insofar as it deprives voters of the opportunity to cast their ballots for such candidates. They further seek a declaration that plaintiffs and those similarly situated are entitled to associate and express themselves as independent candidates, that they are entitled to consideration on the general ballot, and that voter-plaintiffs are entitled to vote for the candidates of their choice, including those without party affiliation. Asserting that there are no genuine issues of fact, plaintiffs have moved for summary judgment pursuant to Rule 56.

Defendants have moved for dismissal for failure to state a cause of action pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56 on the ground that the subject is foreclosed by the decision in *Jones v. Hare,* 440 F.2d 685 (6 Cir. 1971), *cert. den.* 404 U.S. 911, 92 S.Ct. 237, 30 L.Ed.2d 184 (1971), reh. den. 404 U.S. 996, 92 S.Ct. 539, 30 L.Ed.2d 549 (1971). Contending that there are no genuine issues of fact, defendants did not file answers to plaintiffs' Complaint.

Plaintiffs allege federal jurisdiction based on 28 U.S.C. §§ 1331, 1343(2), (3), and (4), 1344, 2201, 2202, 42 U.S.C. §§ 1983 and 1985, U.S. Constitution art. II, § 1, cl. 2 and 4, and the federal election laws. It being alleged that a substantial constitutional question was involved, a three-judge court was convened in accordance with 28 U.S.C. §§ 2281 and 2284. Agreeing that no relevant facts were disputed or testimony needed, counsel assented to proceed on an accelerated basis to the merits of the case. Inasmuch as it was deemed not to go to the merits, plaintiffs' application for a class action posture was voluntarily withdrawn. Accordingly, the Court ordered the trial of the action on the merits consolidated with the hearing of the motion for a preliminary injunction in accordance with Rule 65(a)(2).

Under the Michigan Election Code, a new political party may obtain a position on the official ballot by properly filing petitions signed by a number of registered voters equal to at least one percent of the total number of votes cast for the last successful candidate for Secretary of State. M.C.L.A. § 168.685, M.S.A. § 6.1685.[3] Plaintiffs do

---

**3.** On April 22, 1976, the State of Michigan amended its election law with the enactment of 1976 P.A. 94, M.C.L.A. § 168.560(a) and (b) and § 168.685, M.S.A. § 6.1560(1) and (2) and § 6.1685. Act 94 preserves the principal candidate and petition requirements previously imposed by M.C.L.A. § 168.685, M.S.A. § 6.1685 on new political parties seeking a position on the general election ballot. In addition, it requires new political parties to participate in the August primary election and receive a total vote in excess of three-tenths of 1% of the number of voters casting votes in the primary. Pursuant to M.C.L.A. § 168.560, M.S.A. § 6.1560, the voter at the primary has the option of voting for either the candidates of one of the parties listed on the ballot or the securing of a ballot position for a new party and its candidates in the November general election. In an opinion filed on August 18, 1976, a three-judge court convened in the Eastern District of Michigan determined in a 2–1 decision that Act 94 serves compelling state interests and imposes no undue burdens on new parties seeking ballot access. *Hudler v. Austin,* 419 F.Supp. 1002, No. 6–71189 (E.D.Mich.1976). Because of the lateness of its enactment, however, the Court upheld the Act only for elections after, but not including, the November, 1976 general election.

Act 94 was enacted after the Complaint in the instant action was filed, and *Hudler* was decided after the completion of briefing and oral argument. Act 94 and the pending *Hudler* case

not object to the petition device per₁se as a means of gaining access to the ballot. They do object to section 685's apparent requirement that presidential electors be nominated by political parties and its failure to provide for the nomination of independent electors.

In *Jones v. Hare,* supra, the Sixth Circuit upheld the limitations and procedures imposed by the Michigan election laws, "including the nominal formation of a so-called 'political party.'" 440 F.2d 685, 686. In dismissing a challenge to the Code's lack of a provision whereby independent candidates for certain elective state offices could obtain a position on the official primary and general election ballots, the Court declared:

> "We find that each of these requirements is a reasonable attempt by the State of Michigan to provide ready access to its official ballot to any person who has the support of a minimally significant number of qualified voters. We further find that the procedures utilized by Michigan are drawn to reasonably insure the effectuation of its legitimate regulation of an open election, and that such procedures do not impose any inherently discriminatory conditions upon access to the ballot nor do they place an unreasonably heavy burden on those persons who seek to represent minor 'political parties.'"

440 F.2d at 686.

Both the principal candidate and the petition requirements of Section 685 were upheld with respect to minor parties in *Communist Party v. Austin,* 362 F.Supp. 27 (E.D.Mich.1973), judgment vacated 416 U.S. 922, 94 S.Ct. 1919, 40 L.Ed.2d 278 (1974), aff'd on remand 381 F.Supp. 554 (E.D.Mich. 1974). In *Communist Party,* a three-judge court, per Judge DeMascio, held that the compelling State interests in regulating the number of candidates on the ballot in order to avoid voter confusion and in requiring political organizations to demonstrate sufficient community support to justify a place on the ballot could not be furthered in a significantly less burdensome way.

In order to secure a position on the ballot for Mr. McCarthy, plaintiffs have asserted their willingness to comply with all the legal requirements of the Michigan election laws other than those compelling the formation of a political party. In their Complaint, they state their preparedness "to meet the same type of requirements as are imposed on other independent candidates, such as judges, or those imposed on the formation of new political parties." (Complaint, ¶ 9.) The issue for determination by this Court, then, is the validity of Michigan's statutory requirement that a candidate be a member of a political party in order to obtain a position on the general election ballot.

We begin with the premise that the right to vote is paramount—"a fundamental political right because it is preservative of all rights." *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886). In *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court declared:

> "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." 377 U.S. at 555, 84 S.Ct. at 1378.

Correlative to the right of individual franchise is the right to cast one's vote for the candidate of one's choice:

> "A fundamental principle of our representative democracy is, in Hamilton's words, 'that the people should choose whom they please to govern them.' 2 Elliot's Debates 257. As Madison pointed out at the Convention, this principle is undermined as much by limiting whom the people can select as by limiting the franchise itself." *Powell v. McCormack,* 395 U.S. 486, 547, 89 S.Ct. 1944, 1977, 23 L.Ed.2d 491 (1969)

The full and effective utilization of the individual franchise may entail some form of group association. In *Williams v.*

---

were mentioned in defendants' Supplemental Brief, which suggested that the questions they

raised are outside the scope of the present case. The Court concurs.

*Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the Supreme Court termed "the right of individuals to associate for the advancement of political beliefs" one of "our most precious freedoms." 393 U.S. at 30, 89 S.Ct. 5. In his dissenting opinion in *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), Justice Brennan declared:

> "The right to vote derives from the right of association that is at the core of the First Amendment, protected from state infringement by the Fourteenth Amendment. *NAACP v. Button,* 371 U.S. 415, 430 [83 S.Ct. 328, 9 L.Ed.2d 405] (1963); *Bates v. Little Rock,* 361 U.S. 516, 522–523 [80 S.Ct. 412, 4 L.Ed.2d 480] (1960); *NAACP v. Alabama,* 357 U.S. 449, 460–461 [78 S.Ct. 1163, 2 L.Ed.2d 1488] (1958)." 415 U.S. at 756, 94 S.Ct. at 1291.

This term, in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court declared that certain restraints on "independent associations and candidate campaign organizations" are " 'simultaneously an interference with the freedom of [their] adherents' *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) (plurality opinion)." 424 U.S. at 22, 96 S.Ct. at 636. See also, *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975); *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). In light of these authorities, the burden shifts to defendants to justify Michigan's requirement that access to a position on the official state ballot is available only to members of political parties.

The interest of the State "in the stability of its political system" is "not only permissible, but compelling." *Storer v. Brown,* 415 U.S. at 736, 94 S.Ct. 1274. In *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the Supreme Court unanimously proclaimed:

> "The Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot. *Jenness v. Fortson,* 403 U.S. [431], at 442 [91 S.Ct. 1970, 29 L.Ed.2d 554]; *Williams v. Rhodes,* 393 U.S. at 32 [89 S.Ct. 5]. In so

doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority or at least a strong plurality, of those voting, without the expense and burden of runoff elections. Although we have no way of gauging the number of candidates who might enter primaries in Texas if access to the ballot were unimpeded by the large filing fees in question here, we are bound to respect the legitimate objectives of the State in avoiding overcrowded ballots. Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies. *Jenness v. Fortson,* 403 U.S. at 442, [91 S.Ct. 1970]." 405 U.S. at 145, 92 S.Ct. at 857.

Some qualifications for securing a position on the ballot, such as attaining a minimal percentage of the total votes cast for a particular office in the last election, "are constitutionally valid measures, reasonably taken in pursuit of vital state objectives that cannot be served equally well in significantly less burdensome ways." *American Party of Texas v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974). Statutes designed to elicit a modicum of community support, prevent frivolous or fraudulent candidacies, and reduce voter confusion further compelling state interests if drafted to employ the least restrictive means available. *American Party of Texas v. White,* supra; *Storer v. Brown,* supra; *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

*King v. Willis,* 333 F.Supp. 670 (D.C.Del. 1971) involved a challenge to a Delaware state statute, 15 Del.Code § 4502(a), which permitted access to state ballot positions only by candidates of "qualified political part[ies]." Plaintiff, the candidate of The Vote For Jesus Party, challenged the constitutionality of this provision on first and fourteenth amendment grounds. In upholding the statute, a three-judge court declared:

"The Delaware Legislature is entitled to require a candidate for President or other office to have a Committee, representative of his Party; resident in this State, that will be responsible for that candidacy and to whom the State election officials may look for the complete and fair administration of the Delaware election laws." 333 F.Supp. at 675.

Accordingly, defendants assert that section 685 of the Michigan election law is constitutional since the technical requirement of party affiliation as a condition to obtaining a position on the ballot assures the existence of a modicum of political support, tends to prevent frivolous candidacies by requiring a demonstration of minimal organizational effort and commitment, and reduces voter confusion by compelling the candidate to disclose his political association to the electorate. However, the legal sufficiency of these claims as a justification for maintaining a partisan-non-partisan distinction in the opportunity to obtain a ballot position must be tested against exacting standards.

 Classifications which burden or penalize the exercise of fundamental rights are unconstitutional unless they are necessary to promote some compelling governmental interest. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Restrictions on the right to vote and associate are invalid unless the State shows a compelling state interest. *Williams v. Rhodes*, supra. While the State has a legitimate interest in maintaining the integrity of elections, this interest "must be achieved by a means which does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity." *Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974). The "privilege of holding public office" may not be extended to some and denied to others "on the basis of distinctions that violate federal constitutional guarantees." *Turner v. Fouche*, 396 U.S. 346, 362–63, 90 S.Ct. 532, 541, 24 L.Ed.2d 567 (1970).

*Buckley v. Valeo*, supra, examined restrictions imposed on attaining access to the ballot in equal protection terms:

"Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 [95 S.Ct. 1225, 43 L.Ed.2d 514] (1975), and cases cited. In several situations concerning the electoral process, the principle has been developed that restrictions on access to the electoral process must survive exacting scrutiny. The restrictions can be sustained only if it furthers a "vital" governmental interest, *American Party of Texas v. White*, 415 U.S. 767, 780–781 [94 S.Ct. 1296, 39 L.Ed.2d 744] (1974) . . ."

See also, *Williams v. Rhodes*, supra. In addition to the advancement of a vital or compelling government interest, the restriction must also be demonstrated to be necessary and narrowly drawn:

"[I]f there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.' *Shelton v. Tucker*, 364 U.S. 479, 488 [81 S.Ct. 247, 5 L.Ed.2d 231] (1960)." *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972).

 Clearly, the State of Michigan has a legitimate and vital interest in restricting access to positions on its ballot to serious candidates with a modicum of community support in order to avoid unnecessary confusion in the voting process. This interest, however, may only be achieved through the political party requirement if (1) the restriction does not impose a burden on the exercise by independents of any of their constitutional rights, or (2) the restriction is necessary; that is, the individual burden is slight in comparison to the greater interest the State seeks to achieve and cannot achieve through any method less burdensome of the constitutional rights of independents.

■ Although a candidate may comply with the election laws of Michigan in all other respects, he may not gain access to a position on the Presidential ballot unless nominated by a political party. We conclude that such a statutory scheme, like the Ohio election laws struck down in *Williams v. Rhodes* which required a new political party seeking access to the ballot to obtain petitions signed by 15% of the votes cast in the preceding gubernatorial election,

> "place[s] burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." 393 U.S. at 30, 89 S.Ct. at 10.

The absolute preclusion of ballot access to non-partisan candidates otherwise in compliance with the procedures mandated by the State's election laws imposes a burden on the constitutional rights of independent candidates and their prospective electors and voters.

Having found a burden, we must next determine whether the State's legitimate interest in protecting the integrity of its election system mandates the preclusion of independent candidates from consideration for placement on the ballot.

Defendants contend that the "political party" requirement may be satisfied by any group of citizens sufficient in number to indicate the existence of serious community support; a full slate of candidates is not necessary provided that there is compliance with section 685. Since any loosely-knit political group willing to designate itself a party will, if otherwise in compliance with section 685, be recognized as such, defendants view the question in the instant matter as one of semantics. They concede that if the supporters of the independent candidacy of Mr. McCarthy would have called themselves a party, the State would have accepted their credentials and petitions. The ease with which the political party requirement may be satisfied, defendants maintain, belies any claim that the statuto-ry classification is unduly burdensome of the free exercise by plaintiffs of their constitutional rights of political expression or association.

The Court cannot agree with this contention. An integral part of an independent candidate's message is his freedom from partisan ties. Even the nominal admission of partisan affiliation required by the Michigan election laws seriously compromises an independent candidate's credibility. More importantly, it penalizes him for acting in concert with his ideology by denying him an opportunity extended to similarly situated candidates not opposed to partisan affiliation. In addition to denying independent candidates and their electors the opportunity to appear on the ballot, such a scheme impairs the ability of voters to effectively register their opposition to partisan policies or practices. The restriction of the rights of independents to equal political expression and association serves no legitimate governmental interest and cannot be sustained.

In *Storer v. Brown*, supra, the Supreme Court examined a California statute requiring that the nominating papers of an independent candidate be signed by at least 5% of the number of persons voting in the preceding general election. While the case was remanded to the District Court for additional findings on the question of the burden the statute imposed on independent candidacies for President and Vice-President, the Court disposed of California's contention that the petition requirements imposed on independent candidates were of no consequence since the alternative of qualifying for a ballot position as a new political party was also available. The Court, per Justice White, stated:

> It may be that the 1% registration requirement is a valid condition to extending ballot position to a new political party. Cf. *American Party of Texas v. White* [415 U.S.] 767 [94 S.Ct. 1296, 39 L.Ed.2d 744]. But the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other. A new party organization

contemplates a statewide, ongoing organization with distinctive political character. Its goal is typically to gain control of the machinery of state government by electing its candidates to public office. From the standpoint of a potential supporter, affiliation with the new party would mean giving up his ties with another party or sacrificing his own independent status, even though his possible interest in the new party centers around a particular candidate for a particular office. For the candidate himself, it would mean undertaking the serious responsibilities of qualified party status under California law, such as the conduct of a primary, holding party conventions, and the promulgation of party platforms. But more fundamentally, the candidate, who is by definition an independent and desires to remain one, must now consider himself a party man, surrendering his independent status. Must he necessarily choose the political party route if he wants to appear on the ballot in the general election? We think not.

415 U.S. at 745–46, 94 S.Ct. at 1286.

■ We consider *Storer* dispositive of defendants' claim that the political party alternative precludes a finding that Michigan's statutory scheme for obtaining a position on the ballot imposes a heavier burden on independent candidates than other candidates. With respect to the interest of the State in protecting the integrity of its election system, we concur with Justice White that there is,

"no sufficient state interest in conditioning ballot position for an independent candidate on his forming a new political party as long as the State is free to assure itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support." *Storer v. Brown*, 415 U.S. at 746, 94 S.Ct. at 1287.

The issues presented in this case do not require a determination of the least burdensome methods by which the State can achieve its legitimate objectives in supervising the acquisition of ballot positions. We simply hold that a scheme which provides a method of access which absolutely excludes one class of persons while including all others unduly burdens the exercise of the rights of the members of the former group.

This Court's disposition of the present action is mandated by the principles enunciated by the Supreme Court in *Storer v. Brown*. The principal cases relied upon by defendants are decisions of three-judge district courts or the Court of Appeals. Consequently, to the extent that any conflict exists, *Storer* supersedes them. In addition, *King v. Willis* and *Jones v. Hare* were decided prior to *Storer*. The cases are also distinguishable on other grounds. *King v. Willis* and *Communist Party v. Austin* involved challenges to state election schemes raised by minor parties and, hence, the issue of independent candidacies was not before those courts. *Jones v. Hare* was a per curiam opinion upholding Michigan's political party requirement with respect to state, rather than national, elective offices. Furthermore, section 685, the provision specifically at issue here was not among the provisions challenged in *Jones v. Hare*.

■ Defendants have also objected to the entrance of an order directing the placing of Mr. McCarthy's name on the November, 1976 ballot at this late date on the ground that it could seriously disrupt their preparations for the general election. While the Court is not unmindful of the administrative problems such an order would entail, we conclude that they are substantially outweighed by the right of plaintiffs and other supporters of the independent candidacy of Mr. McCarthy to equal treatment with partisan candidates and their supporters in the acquisition of a position on the ballot. See *Hudler v. Austin*, 419 F.Supp. 1002, No. 6–71189 (E.D.Mich.1976), which directed the defendant officials of the State of Michigan "to take such steps as are necessary to place on the November ballot" the minor party plaintiffs who would have been eligible for a position on the ballot in the November, 1976 election but for the intervention of a recent amendment to the Michigan election law. Opinion, p. 1014.

Accordingly, this Court orders, adjudges, and decrees:

(1) The election laws and procedures of the State of Michigan, Public Act 116 of 1954, M.S.A. Chapter 58a, are constitutionally deficient as applied to the plaintiffs herein and violative of their rights under the First and Fourteenth Amendments, and therefore shall be implemented to permit independent candidates not affiliated with any political party a position on the official State ballot on terms and conditions equal to those of partisan candidates;

(2) The Secretary of State of Michigan is directed to accept the certificates and petitions timely delivered to him by the Michigan Committee for the Independent Candidacy of Eugene J. McCarthy in accordance with the Michigan election code, specifically M.C.L.A. § 168.42, M.S.A. § 6.1042; M.C.L.A. § 168.685, M.S.A. § 6.1685; M.C.L.A. § 168.686a, M.S.A. § 6.1686(1);

(3) The Michigan Board of State Canvassers is directed to accept the petitions timely filed by the Michigan Committee for the Independent Candidacy of Eugene J. McCarthy in accordance with the Michigan election code, specifically M.C.L.A. § 168.-685, M.S.A. § 6.1685 with a view to processing them according to the same standards employed with respect to the petitions of new political parties and, if warranted, certifying them and taking such other steps as are necessary to secure a position on the November, 1976 official State ballot for Mr. McCarthy and his duly nominated presidential electors;

(4) This three-judge court is not dissolved and shall remain available to exercise continuing jurisdiction in enabling the parties to implement this Order and resolving such additional matters as may arise.

IT IS SO ORDERED.

ENGEL, Circuit Judge (concurring).

Because I conclude that we are bound by *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), I concur. If we were writing upon a clear slate, I might well reach a different result. In particular, I have serious reservations, from both an historical and practical perspective, concerning the language of *Storer v. Brown,* at 415 U.S. 745–6, 94 S.Ct. 1274, as quoted in Judge Miles' opinion. It is not, however, dicta, and as Judge Miles correctly points out, it is binding on us here.

FOX, Chief Judge.

I concur in Circuit Judge ENGEL's limiting opinion.