Peggy GOLDMAN–FRANKIE, et al.,
Plaintiffs-Appellees,

v.

Richard AUSTIN, et al.,
Defendants-Appellants.

No. 82–1747.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 25, 1983.

Decided Feb. 15, 1984.

Frank J. Kelley, Atty. Gen. of Mich., Michael Moquin, Asst. Atty. Gen., argued, Lansing, Mich., for defendants-appellants.

George Washington, Donald B. Greenspon, Detroit, Mich., argued, for plaintiffs-appellees.

Before JONES and KRUPANSKY, Circuit Judges, and SPIEGEL, District Judge.*

KRUPANSKY, Circuit Judge.

This is an appeal from an order of the District Court for the Eastern District of Michigan granting the motion of plaintiffs-appellees for summary judgment and ordering that the name of plaintiff-appellee Peggy Goldman-Frankie appear on the November 2, 1982 ballot as an independent candidate for a seat on the Michigan State Board of Education.

The underlying facts to this controversy are not in dispute. Goldman-Frankie was intent upon becoming an independent candidate for a seat on the Michigan Board of Education in the 1982 election. There were two major obstacles to this endeavor. First, Michigan election laws incorporate no procedure by which an independent candidate may gain access to the ballot although

---

* Hon. S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

M.C.L.A. § 168.685(1) provides that a "new political party" may obtain ballot access by filing a petition bearing signatures equal to 1% of the number of votes received by the successful candidate for secretary of state at the last election for that office.

The second impediment to Goldman-Frankie's candidacy was the Mich. Const. of 1963, Art. VIII § 3, which reads in pertinent part:

> The state board of education shall consist of eight members *who shall be nominated by party conventions* and elected at large for terms of eight years as prescribed by law. (emphasis added).

Goldman-Frankie was not a candidate of a qualifying party under § 168.685(1), nor was she nominated by a party convention. Nevertheless, on May 26, 1982, Goldman-Frankie filed a "Declaration of Candidacy" with defendant Richard A. Austin, the Secretary of State of Michigan. Goldman-Frankie was informed by members of the State Board of Canvassers that her name could not be placed on the ballot because state law did not include a procedure for placement of independent candidates on the ballot for the Michigan State Board of Education.

On July 16, 1982, Goldman-Frankie and two persons who declared their intention to vote for her filed a complaint in the United States District Court for the Eastern District of Michigan seeking preliminary and permanent injunctive relief. The complaint named Austin and the members of the State Board of Canvassers as defendants. On August 20, 1982, after expediting review of the merits and entertaining oral argument by the parties, the trial court granted plaintiffs' motion for summary judgment and ordered the defendants to place Goldman-Frankie's name on the November 2, 1982 ballot.[1] Defendants appealed.

Initially, this Court observes that although the election has been conducted and the vote duly certified, the action is within the purview of the "capable of repetition yet evading review" doctrine. *See Storer v. Brown,* 415 U.S. 724, 737, n. 8, 94 S.Ct. 1274, 1282, n. 8, 39 L.Ed.2d 714 (1974). *Accord: Anderson v. Celebrezze,* —— U.S. ——, ——, 103 S.Ct. 1564, 1567, n. 3, 75 L.Ed.2d 547 (1983).

Counsel for appellants conceded at oral argument that the only procedure available to independent candidates to have their names placed upon the ballot is by court order. The plaintiffs charge that the absence of a reasonable means of access to the ballot violates the Equal Protection Clause.[2]

Plaintiffs' charge poses no new issue of constitutional law. First, it is settled that restrictions on access to the ballot impinge on the fundamental right to associate for the advancement of political beliefs and the fundamental right to vote. *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979); *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). Pursuant to the fundamental rights strand of equal protection analysis, a State must prove that its limitation "is necessary to serve a compelling interest." *Illinois State Board of Elections v. Socialist Workers Party, supra,* 440 U.S. at 184, 99 S.Ct. at 990; *American Party of Texas v. White,* 415 U.S. 767, 780, 94 S.Ct. 1296, 1305, 39 L.Ed.2d 744 (1974); *Williams v. Rhodes, supra,* 393 U.S. at 31, 89 S.Ct. at 10. *Cf. Anderson v. Celebrezze, supra,* —— U.S. at ——, 103 S.Ct. at 1569, n. 7; *Clements v. Fashing,* 457 U.S. 957, 962–65, 102 S.Ct. 2836, 2843–45, 73 L.Ed.2d 508 (1982).

Secondly, the Supreme Court has expressly recognized that an independent candidate must be afforded a reasonable opportunity to obtain a ballot position and that the State cannot establish, as a condition precedent to the position, the membership in or

---

1. Goldman-Frankie received 28,620 votes.

2. Although this Court has applied an Equal Protection analysis in arriving at a decision, the Supreme Court has recognized that ballot ac-

cess cases are equally cognizable under the First Amendment. *Anderson v. Celebrezze, supra,* —— U.S. at ——, 103 S.Ct. at 1569, n. 7.

formation of a political party. *Storer v. Brown, supra.* In *Storer* the State argued that restrictions on independent candidates were inconsequential because the State had provided a valid procedure for newly organized political parties to obtain ballot position. The Supreme Court soundly rejected the argument:

> The political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other. A new party organization contemplates a statewide, ongoing organization with distinctive political character. Its goal is typically to gain control of the machinery of state government by electing its candidates to public office. From the standpoint of a potential supporter, affiliation with the new party would mean giving up his ties with another party or sacrificing his own independent status, even though his possible interest in the new party centers around a particular candidate for a particular office. For the candidate himself, it would mean undertaking the serious responsibilities of qualified party status under California law, such as the conduct of a primary, holding party conventions, and the promulgation of party platforms. But more fundamentally, the candidate, who is by definition an independent and desires to remain one, must now consider himself a party man, surrendering his independent status. Must he necessarily choose the political party route if he wants to appear on the ballot in the general election? We think not.

> \*　\*　\*　\*　\*　\*

> [W]e perceive no sufficient state interest in conditioning ballot position for an independent candidate on his forming a new political party as long as the State is free to assure itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support.

415 U.S. 745–46, 94 S.Ct. 1286–87 (footnote omitted).

Following *Storer,* several cases arose as a result of the independent candidacy of former Senator Eugene J. McCarthy in his quest for the presidency of the United States, most notably, *McCarthy v. Briscoe,* 429 U.S. 1317, 97 S.Ct. 10, 50 L.Ed.2d 49 (1976). In *Briscoe,* Senator McCarthy and several of his supporters challenged the Texas election laws which, like those of Michigan, did not afford an opportunity for an independent to qualify for a position on the ballot for the office of president. The district and appellate courts agreed that the Texas election scheme was unconstitutional but refused to order McCarthy's name placed on the ballot for fear of disrupting the Texas election process.

Thereafter, McCarthy supporters petitioned Justice Powell for relief in his capacity as a Circuit Justice. Citing *Storer v. Brown, supra,* Justice Powell stated that "the Court [has] flatly rejected the notion that an independent [can] be forced to seek ballot position by joining or organizing a political party." *McCarthy v. Briscoe, supra,* 429 U.S. at 1320, 97 S.Ct. at 12. Accordingly, Justice Powell approved the district court's characterization of the Texas election laws "as demonstrating an 'intransigent and discriminatory position' and an 'incomprehensible policy'". *Id.* at 1321, 97 S.Ct. at 12. Finally, Justice Powell took judicial notice of Senator McCarthy's stature as a nationally known figure, his 1968 presidential candidacy and the fact that he had qualified for the ballot in many other states. Justice Powell concluded that these facts demonstrated "the requisite community support" and he therefore ordered that Senator McCarthy's name be placed upon the Texas ballot.

Justice Powell's decision in *Briscoe* was both preceded and followed by lower court decisions declaring unconstitutional state election schemes—including the one in Michigan—which precluded ballot access for Senator McCarthy as an independent candidate. *See e.g., McCarthy v. Exon,* 424 F.Supp. 1143 (D.Neb.) *summ. aff'd.,* 429 U.S. 972, 97 S.Ct. 479, 50 L.Ed.2d 581 (1976); *McCarthy v. Austin,* 423 F.Supp. 990 (W.D.Mich.1976); *McCarthy v. Tribbitt,*

421 F.Supp. 1193 (D.Del.1976); *McCarthy v. Askew,* 420 F.Supp. 775 (S.D.Fla.1976) *aff'd,* 540 F.2d 1254 (5th Cir.1976).[3] *See also MacBride v. Exon,* 558 F.2d 443 (8th Cir.1977); *MacBride v. Askew,* 541 F.2d 465 (5th Cir. 1976).

Despite existing legal precedent, particularly *McCarthy v. Austin, supra,* wherein the Michigan scheme was expressly declared unconstitutional for its failure to provide independent candidates for public office with a means of access to the ballot, the Michigan legislature continued to ignore the evolving judicial pronouncements as late as the 1980 presidential election. In that election Gus Hall and Angela Davis, running as independent candidates in Michigan for president and vice-president, respectively, were forced to resort to the federal court to obtain ballot position. *Hall v. Austin,* 495 F.Supp. 782 (E.D.Mich.1980).

■ Michigan has, to date, failed to remedy the situation. This Court is therefor compelled to again declare, in absolute terms, that the Michigan election laws, so far as they foreclose independent candidates access to the ballot, are unconstitutional.

Defendants urge that, even assuming the election laws are otherwise constitutionally deficient, Goldman-Frankie was not entitled to relief. Defendants assert that the *McCarthy* precedent is inapposite because those cases involved *federal* office whereas Goldman-Frankie was seeking a state office and the state constitution, specifically, Art. VIII § 3, mandated party nomination as the vehicle to ballot access for Michigan Board of Education candidates.

■ The arguments are not persuasive. "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 1377, 12 L.Ed.2d 506 (1964). While the State may well have

decided to make seats on the Michigan Board of Education appointive positions, thereby removing the voters' direct impact on the holders, *see Sailors v. Kent County Bd. of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 665, 86 S.Ct. 1079, 1080, 16 L.Ed.2d 169 (1966); *Kramer v. Union Free School District,* 395 U.S. 621, 628–30, 89 S.Ct. 1886, 1890–91, 23 L.Ed.2d 583 (1969). *See Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 10, 102 S.Ct. 2194, 2200, 72 L.Ed.2d 628 (1982); *Hadley v. Junior College District of Metropolitan Kansas City Missouri,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970). Hence, Art. VIII § 3, which, in effect, grants to the electorate a franchise to select members of the Michigan Board of Education and then limits that franchise to those who support a party nominated candidate, is unconstitutional.

The defendants' argument that the lower court and this court are bound by *Jones v. Hare,* 440 F.2d 685 (6th Cir.) *cert. denied,* 404 U.S. 911, 92 S.Ct. 237, 30 L.Ed.2d 184 (1971), is not convincing. In *Jones,* this Court rejected a broad attack on Michigan's election laws and constitutional provisions including Art. VIII § 3. The Court found the "nominal formation of a so-called 'political party'" a reasonable requirement for gaining access to the ballot. *Id.,* at 686. As the pronouncements of the Supreme Court in *Storer v. Brown* and its progeny make clear, *Jones v. Hare* has been overruled.

■ Finally, we affirm the relief mandated by the district court—ordering Goldman-Frankie's name on the ballot. *McCarthy v. Briscoe, supra.* Although Goldman-Frankie's demonstration of the requisite community support was not compelling,[4]

---

**3.** For a more detailed review of the McCarthy litigation, *see* Armor & Marcus, *The Bloodless Revolution of 1976,* 62 A.B.A.J. 1108 (1977).

**4.** In 1972 Goldman-Frankie was a candidate for the Wayne State University Board of Governors on the Communist Party ticket and received 14,903 votes. In 1974 she ran for Michigan State Board of Education, again on the

the Court finds it sufficient to warrant the relief granted by the district court.

In accordance with the foregoing, the judgment of the district court must be and hereby is AFFIRMED. Costs to be borne by the appellants.

Communist Party Ticket, and received 5,936 votes.

The federal courts must, of course, remain careful not to burden Michigan ballots with frivolous candidates. However, it would be understandable if the courts looked with in-creasing disfavor on the State's arguments regarding requisite support for a candidate when the State possesses the power to establish a uniform method of assuring such support and continuously refuses to do so.