Jeremy G. **CRIPPS**, et al., Plaintiffs,

v.

**SENECA COUNTY BOARD OF ELECTIONS**, et al., Defendants.

No. C 85–7577.

United States District Court, N.D. Ohio, W.D.

Sept. 13, 1985.

Opinion and Order Nov. 1, 1985.

---

Jacqueline Boney, Toledo, Ohio, for plaintiffs.

Peter Casey, Toledo, Ohio, Steve Shuff, Tiffin, Ohio, Andrew Sutter, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN W. POTTER[*], District Judge.

This cause came to be heard on plaintiffs' motion for preliminary injunction, defendant Ohio Secretary of State Sherrod Brown's opposition thereto, plaintiffs' reply, and defendant City of Tiffin, Ohio's memorandum in response to plaintiffs' motion for preliminary injunction. Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 2201 and 2202.

Plaintiffs have brought this action under both the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983, seeking declaratory and injunctive relief for alleged deprivation of certain constitutional rights pertaining to ballot access for a prospective independent candidate for political office and to associational and voting rights. Initially, plaintiffs named as parties defendant, the Seneca County Board of Elections, four individuals in their respective official capacity as members of the Seneca County Board of Elections, and Sherrod Brown in his official capacity as Ohio Secretary of State. By leave of Court granted July 30, 1985, plaintiffs filed an amended complaint which, *inter alia*, added the City of Tiffin, Ohio (hereafter Tiffin) as a party defendant.

Plaintiffs contend, in essence, that both OHIO REV.CODE § 3513.252 and Article X of the Tiffin City Charter are, as applied to plaintiff Jeremy Cripps (hereafter Cripps), unconstitutional insofar as said statutory provisions establish an early deadline for filing with the appropriate board of elections nominating petitions of independent candidates for political office of municipal corporations having populations in excess of two thousand. Plaintiffs assert that at the direction of the Ohio Secretary of State's office, the Seneca County Board of Elections (hereafter Seneca Board), applying OHIO REV.CODE § 3513.252 as incorporated by reference in Tiffin City Charter Article X, refused to certify the name of plaintiff Cripps as an independent candidate for the position of Finance Director of the City of Tiffin for inclusion on the November 5, 1985 general election ballot.

Cripps maintains that said failure to certify his name as an independent candidate for the office of Tiffin Finance Director unduly burdens both his political opportunity and his voting and associational rights, and impermissibly discriminates against him, thereby unlawfully depriving him of the equal protection of the laws. Plaintiffs Dickerson and Birch contend that said failure of the Seneca Board to certify the name of Jeremy Cripps as a candidate for Tiffin Finance Director unduly burdens their voting and associational rights.

Defendant Ohio Secretary of State Sherrod Brown (hereafter Brown) asserts that plaintiffs have failed to establish the

---

[*] *Ed. Note:* The Findings of Fact and Conclusions of Law were signed by Judge Walinski for Judge Potter.

threshold requisite criteria warranting the "drastic remedy" of preliminary injunctive relief. Brown further asserts that the applicability of *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) to local elections remains an open question, therefore, plaintiffs cannot demonstrate a likelihood of success on the merits. Brown contends that plaintiffs are unable to demonstrate irreparable injury absent issuance of a preliminary injunction. Brown maintains, albeit implicitly, that by mid-September the Court will have rendered a final decision in this cause. Moreover, Brown opines that in the event plaintiffs prevail on the merits, plaintiffs "have more than enough time to successfully campaign before the forthcoming general election. Brown suggests that Ohio has a substantial interest in the unobstructed exercise of controlling both the election process and the exercise of the franchise in Ohio, and therefore, issuance by the Court of a preliminary injunction would not serve the public interest.

Defendant City of Tiffin neither supports nor opposes plaintiffs' motion for a preliminary injunction. However, Tiffin contends that since candidate certification for the position of Tiffin Finance Director rests solely with the Seneca County Board of Elections and since Tiffin has no power or authority by which to comply either with plaintiffs' demands or with the injunctive relief sought by plaintiffs should the court order same, such preliminary injunction, if issued by the Court, should not be addressed to Tiffin.

On August 22, 1985, the Court approved the stipulation of all parties that plaintiffs' motion for preliminary injunction be submitted to the Court for decision upon the briefs then filed. Said stipulation further provides that all parties waive an evidentiary hearing with respect to plaintiffs' subject motion. The Court notes that defendant Seneca Board elected not to separately respond to the motion *sub judice.* Nor did the parties file a set of stipulated facts. Notwithstanding, the Court recognizes that the pertinent facts appear, for the most part, to be not in dispute. The Court,

having considered the memoranda submitted with respect to plaintiffs' motion for preliminary injunction and having thoroughly reviewed the record in this case, has made an independent determination of the facts and the legal conclusions to be drawn therefrom. The Court determines that plaintiffs' motion for preliminary injunction should be granted.

### *Findings of Fact*

1. Plaintiff Cripps, a native of Leicester, England, first came to the United States of America in 1968. In 1972, plaintiff Cripps, who was born in 1943, married a natural born United States citizen. Since August, 1983, Cripps has resided in Tiffin, Seneca County, Ohio. In September, 1984, Cripps applied to the U.S. Immigration Service for the purpose of becoming a naturalized citizen. The Immigration Service scheduled Cripps for examination during January, 1985, which exam he took and passed. Thereafter, he was scheduled to take his oath of citizenship on March 15, 1985. On March 15, 1985 in the United States District Court for the Northern District of Ohio, Western Division, Cripps became a naturalized citizen.

2. Plaintiff Birch is a 31 year old natural born United States citizen who has resided in Tiffin, Seneca County, Ohio for approximately the past 7 years. Birch states that she has known Cripps for 2 years, that she believes him to be qualified for the position of Tiffin Finance Director, that she is a registered voter in Tiffin, Seneca County, Ohio, that she supports Cripps' independent candidacy for said political office, and that if Cripps' name is included on the November 5, 1985 general election ballot for the position of Tiffin Finance Director, she will vote for him for said position.

3. Plaintiff Dickerson is a 37 year old natural born United States citizen who has resided in Tiffin, Seneca County, Ohio for approximately the past 3 years. Dickerson states that he has known Cripps for 2 years, that he believes Cripps to be quali-

fied for the position of Tiffin Finance Director, that he is a registered voter in Tiffin, Seneca County, Ohio, that he supports Cripps' independent candidacy for said political office, and that if Cripps' name is included on the November 5, 1985 general election ballot for the position of Tiffin Finance Director, he will vote for Cripps for said position.

4. Defendant Brown is the Secretary of State of the State of Ohio. Pursuant to OHIO REV.CODE § 3501.04, the Ohio Secretary of State is Ohio's chief election officer and, pursuant to OHIO REV.CODE § 3501.05(B) and (M) respectively, the Secretary of State "[a]dvises members of ... boards [of elections] as to the proper methods of conducting elections ... [and c]ompels the observance by elections officers in the several counties of the requirements of the election laws."

5. Defendant Seneca County Board of Elections is duly constituted, pursuant to OHIO REV.CODE § 3501.06, as such, by appointment of the Ohio Secretary of State, and, pursuant to OHIO REV.CODE § 3501.11(K) and (M) respectively, "shall ... [r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers ... [and i]ssue certificates of election...."

6. Defendants Main, Ecos, Kinn and Zoeller, having been duly appointed by the Ohio Secretary of State, pursuant to OHIO REV.CODE § 3501.06, are the duly appointed members of the Seneca County Board of Elections.

7. Defendant City of Tiffin is a charter municipal corporation duly organized under the constitution and laws of the State of Ohio.

8. In January, 1985, Cripps decided to become an independent candidate for election in the 1985 general election to the office of Tiffin Finance Director. Cripps has never been involved in any political activity with either the Republican or Democratic parties and he considers himself politically independent of either of said political parties. The office of Tiffin Finance Director is an elected position. Article VI,

§ 6.01 of the Tiffin City Charter provides that the Director of Finance shall be elected from the city-at-large.

Article XI, § 11.01 requires that each elected officer of the City of Tiffin be an elector, OHIO REV.CODE §§ 3501.01(N) and 3503.01, of said City and have resided in Tiffin for a period of one year prior to election. OHIO REV.CODE § 3503.01 requires that a qualified elector be, *inter alia*, a citizen of the United States.

9. Article X of the Tiffin City Charter incorporates, by reference, the general election laws of the State of Ohio, including OHIO REV.CODE § 3513.252.

10. OHIO REV.CODE § 3513.252, in pertinent part, provides:

> The nominating petitions of independent candidates for election as officers of a municipal corporation having a population in excess of two thousand ... shall contain signatures of qualified electors of the municipal corporation ... sufficient in number to satisfy ... section 3513.257 of the Revised Code. Such petition[s] shall be filed with the board of elections not later than ... the seventy-fifth day before the day of the primary election immediately preceding such general election.

11. The City of Tiffin is a municipal corporation with a population in excess of two thousand. Pursuant to OHIO REV. CODE § 3513.01, a primary election was held on May 7, 1985 in Tiffin "for the purpose of nominating persons as candidates of political parties for election to offices to be voted for at the next succeeding general election." The seventy-fifth day immediately preceding said May 7, 1985 primary election fell on February 21, 1985. As provided by OHIO REV.CODE § 3501.01, the next succeeding general election will be held on November 5, 1985.

12. Prior to February 21, 1985, Cripps notified both the Director of the Seneca County Board of Elections and the office of the Ohio Secretary of State of his desire to be an independent candidate in the November 5, 1985 general election for the position

of Tiffin Finance Director. Cripps further notified said offices that he would not be a United States citizen, and thus, not a qualified elector, by the February 21, 1985 filing deadline. Cripps was informed by both offices that nominating petitions may be filed only by then duly qualified electors.

13. OHIO REV.CODE § 3513.261, in pertinent part, provides:

Each nominating petition shall contain a statement of candidacy which shall be signed by the candidate . . . named therein. Such statement of candidacy shall contain a declaration made under penalty of election falsification that the candidate . . . is an elector qualified to vote for the office he seeks.

OHIO REV.CODE § 3503.06 prohibits a person from signing any declaration of candidacy or any nominating petition, unless said person is then registered as an elector.

14. As provided by the strictures of OHIO REV.CODE § 3513.252, February 21, 1985 was the last day that Cripps could timely file his nominating petitions for his independent candidacy in the November 5, 1985 general election for the Office of Tiffin Finance Director.

On February 21, 1985, Cripps was not a citizen of the United States and, therefore, he was not a qualified elector as of said date.

15. On March 15, 1985, Cripps became a naturalized citizen of the United States. At the Seneca County Board of Elections, on March 18, 1985, Cripps registered to vote. By April 18, 1985, Cripps had satisfied the requirements of OHIO REV.CODE § 3503.01, and, thus, became a qualified elector.

16. On April 23, 1985, Cripps signed his statement of candidacy, and obtained and began circulating his nominating petitions. On May 7, 1985, which is 182 days before the scheduled general election, at the Seneca County Board of Elections, Cripps filed his nominating petitions and tendered the required filing fee, both of which were accepted by the Director of said Elections Board. The subject nominating petitions contained a sufficient number of valid signatures. Further, Cripps' nominating petitions for the office of Tiffin Finance Director fulfill all requirements, except the OHIO REV.CODE § 3513.252 imposed filing deadline of February 21, 1985, for his inclusion on the November 5, 1985 general election ballot. Upon the advice of the Ohio Secretary of State's office, the Seneca County Board of Elections, during a meeting held May 7, 1985, voted to disallow Cripps' nominating petitions based on his noncompliance with the February 21, 1985 filing deadline. By letter dated May 9, 1985, Cripps was notified of the Seneca Board's decision to disallow his "name on the November 5, 1985 General Election ballot, as an Independent Candidate for Tiffin City Finance Director."

17. Ohio Secretary of State Sherrod Brown admits that provisions of the Ohio Revised Code, other than § 3513.252, would not bar inclusion of Cripps' name on the official ballot of the 1985 general election in Tiffin, Ohio.

18. Brown and Seneca County Board of Elections both admit that the May 7, 1985 decision of the Seneca Board to disallow Cripps' name on the November 5, 1985 general election ballot was made by the Board on the sole ground that Cripps' nominating petitions were not timely filed.

19. The February 21, 1985 filing deadline imposed by OHIO REV.CODE § 3513.-252 is 257 days prior to the scheduled November 5, 1985 general election. Said filing deadline, along with other Ohio election laws, are incorporated by reference in Article X of the Tiffin City Charter.

20. Under usual and customary procedures, the Seneca County Board of Elections would require approximately two hours to verify the signatures on the nominating petitions filed on May 7, 1985 by Cripps.

21. Nominating petitions filed pursuant to OHIO REV.CODE § 3152.252 are not processed in any way until the 15th day of June, at which time said petitions are made available until June 30 for public inspection. Pursuant to OHIO REV.CODE

§ 3513.262, nominating petitions are not required to be examined by the Board of Elections until the 15th day of July. The time for lodging protests against nominating petitions extends to the 30th day of July. It appears that the general election ballots are printed no earlier than 75 days preceding the date of the November 5, 1985 general election, to wit, August 22, 1985.

### Conclusions of Law

1. Jurisdiction over both the subject matter of this cause and all of the parties is proper in this Court. 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 2201. Further, this case is properly venued in this Court. 28 U.S.C. § 1391(b).

2. The United States Court of Appeals for the Sixth Circuit has enunciated four elements or criteria which must be considered and "carefully balanced" in deciding whether to issue or withhold a preliminary injunction. *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985), *citing, Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 264 (6th Cir.1977).

> 1. Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
>
> 2. Whether the plaintiffs have shown irreparable injury;
>
> 3. Whether the issuance of a preliminary injunction would cause harm to others; and
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n*, 563 F.2d at 261 (citations omitted). See also *Frisch's Restaurant, Inc.,* 759 F.2d at 1263; *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985); *Christian Schmidt Brewing Co. v. G. Heileman Brewing*, 753 F.2d 1354, 1356 (6th Cir.1985); *Mobile Corp. v. Marathon Oil Co.*, 669 F.2d 366, 369 (6th Cir.1981). Cf. 19 FEDERAL PROCEDURE, L.Ed. § 47:47 *et seq.* (1983).

Although the four factors delineated *supra* must be considered in evaluating a request for a preliminary injunction, the four factors do not "establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief." *Tate v. Frey*, 735 F.2d 986, 990 (6th Cir.1984), *quoting, Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir.1982). "A fixed legal standard is not the essence of equity jurisprudence...." *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d at 1229.

Notwithstanding the overall flexibility of the considerations for preliminary injunctive relief and the discretion vested in this Court regarding such considerations, this Court will not grant a motion for preliminary injunction without a showing that plaintiffs would suffer irreparable harm absent such relief. *Friendship Materials, Inc.*, 679 F.2d at 103 (citations omitted).

3. Laws that affect candidates for political office always have at least some theoretical correlative effect on voters. *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972).

It is axiomatic that ballot access restrictions or impediments limit the field of political candidates from which voters might choose. Additionally, such ballot access restrictions limit a prospective candidate's political opportunity. "The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of political opportunity.' " *Clements v. Fashing*, 457 U.S. 957, 964, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (plurality opinion), *quoting, Lubin v. Parrish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974).

4. Cripps' right to a place on the ballot overlaps with and is intertwined with fundamental rights of voters. *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The rights implicated

by the nominating petition filing deadline "rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. at 30, 89 S.Ct. at 10. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964).

■ 5. The question presented is whether the nominating petition filing deadline imposed by OHIO REV.CODE § 3513.252, as incorporated by reference in Article X of the Tiffin City Charter, and as applied to independent candidates such as Jeremy Cripps, passes constitutional muster. The obvious important questions raised by Cripps are whether OHIO REV. CODE § 3513.252 as applied, unconstitutionally abridges the protected associational and voting rights of Cripps, of plaintiffs Dickerson and Birch, and of his other supporters; whether said statute impermissibly discriminates against independent candidates in reference to partisan candidates; and whether any abridgement purportedly justified by an asserted compelling state interest is the result of the least restrictive means to achieve the interest which the subject statute purportedly serves.

6. The Court finds that the "legitimate state interests" offered by Brown as justifying the "75-day filing deadline imposed by" OHIO REV.CODE § 3513.252 "include encouraging compromise and political stability, ensuring that the election winner will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education." (Answer of Secretary of State Brown to interrogatory no. 8 of plaintiffs' first set of interrogatories.)

7. Candidates of political parties for election to offices to be voted for at the next succeeding general election are nominated at primary elections held on the first Tuesday after the first Monday in May of each year, approximately 182 days before the succeeding general election. OHIO REV.CODE § 3513.01.

After *Anderson v. Celebrezze*, 499 F.Supp. 121 (1980), *rev'd*, 644 F.2d 544 (1981), *rev'd*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), "[p]ersons desiring to become independent ... candidates for the offices of president and vice-president of the United States," must file a statement of candidacy and a nominating petition no later than 75 days before the date of the general election at which the president and vice-president are to be elected. OHIO REV.CODE § 3513.257.

However, a person desiring to become an independent candidate for an office for which candidates may be nominated at a primary election, must file a statement of candidacy and nominating petition no later than 75 days before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters. *Id.* Moreover, independent candidates for election as officers of municipal corporations having populations in excess of two thousand, must file their nominating petitions no later than 75 days before the day of the primary election preceding the next general election. OHIO REV.CODE § 3513.252.

The 75th day before the primary election preceding the next general election falls approximately 257 days before said general election. Pursuant to OHIO REV.CODE § 3513.01, primary elections are held for the purpose of nominating persons as candidates of political parties for election to offices to be voted for at the next succeeding general election. Primary elections are held on the first Tuesday after the first Monday in May of each year, approximately 182 days before the succeeding general election.

8. Ballot access cases focus on the extent to which the challenged statutorily imposed restrictions operate to exclude certain classes of candidates from the electoral process. The Court's inquiry must be whether the OHIO REV.CODE § 3513.252 filing deadline unfairly or unnecessarily burdens the availability of political opportu-

nity. *Lubin v. Parrish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974).

9. The Court recognizes that Ohio has an important regulatory interest with respect to its elections, which interest is generally sufficient to justify reasonable, nondiscriminatory and even-handedly applied restrictions. *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569–70, 75 L.Ed.2d 547 (1983).

The Court must consider the character and magnitude of the asserted abridgment of rights protected by the First and Fourteenth Amendments, which rights plaintiffs seek to vindicate. The Court must also consider the legitimacy and strength of the precise interests advanced by the State as justification for the burden visited upon plaintiffs as a result of application of OHIO REV.CODE § 3513.252. The Court must decide the extent to which the asserted state interests necessitate impinging upon plaintiffs' rights. *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570.

The Court finds that defendants have not adequately explained why pursuit of the purported state interests makes it necessary to burden plaintiffs' rights. Absent a demonstration of such necessity, OHIO REV.CODE § 3513.252 cannot pass constitutional muster. See *Iowa Socialist Party v. Slockett*, 604 F.Supp. 1391, 1397–98 (S.D. Iowa 1985).

10. The Court further recognizes the legitimate state interests of voter education and of providing the electorate with an "understandable ballot." However, it is by no means self-evident that Ohio's legitimate interest in voter education is at all served by a requirement that independent candidates must declare their candidacy in February in order to be eligible for a place on the general election ballot in November. *Anderson*, 460 U.S. at 798, 103 S.Ct. at 1575. Cf. *Iowa Socialist Party v. Slockett, supra.*

11. The State of Ohio has a legitimate and compelling interest in maintaining the stability of its political processes. *Storer v. Brown*, 415 U.S. 724, 735–36, 94 S.Ct. 1274, 1281–82, 39 L.Ed.2d 714 (1974); *An-derson*, 499 F.Supp. at 134. However, the Court is unpersuaded that OHIO REV. CODE § 3513.252 was intended to be a disaffiliation statute. Indeed, no such discernible legislative design can be gleaned from the face of said statute. Nor is the Court convinced that, although OHIO REV. CODE § 3513.252's filing deadline bars a candidate from being included on the succeeding general election ballot as an independent, such result alone promotes or effectuates political stability.

The Court is, at this time, unpersuaded that OHIO REV.CODE § 3513.252 as applied to Cripps, in any significant way, promotes such interests. The Court finds that defendants have, as yet, demonstrated no interest served by the subject "filing deadline other than its simple function as an arbitrary point in time by which independent candidates must officially throw their hats in the political ring" (footnote omitted). *Anderson*, 499 F.Supp. at 135. The Court is unpersuaded that sufficient legitimate reasons exist which warrant or justify defendants compelling independent candidates to effectively declare their candidacies 75 days earlier than partisan candidates.

12. Although administration of the election process is a matter largely entrusted to the States, the States may not infringe upon basic constitutional protections. *Kusper v. Pontikes*, 414 U.S. 51, 57, 94 S.Ct. 303, 307–08, 38 L.Ed.2d 260 (1974), *citing, Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Accordingly, "unduly restrictive state election laws may ... run afoul of the First and Fourteenth Amendments." *Williams v. Rhodes*, 393 U.S. at 30, 89 S.Ct. at 10. It cannot be seriously doubted that the Ohio General Assembly's discretion in establishing a filing deadline must be circumscribed by the First Amendment rights of political candidates and voters.

When such fundamental rights are implicated or purportedly burdened by state legislative enactments, the First and Fourteenth Amendments to the United States Constitution require that a compelling state

interest exist to justify abridgment of such rights. See, e.g., *Illinois Board v. Socialist Workers Party,* 440 U.S. 173, 184–86, 99 S.Ct. 983, 990–91, 59 L.Ed.2d 230 (1979). Notwithstanding, the state statutory provision under scrutiny must be narrowly tailored and effectuate the least drastic or restrictive means of protecting the asserted state interests. *Id.*

13. Nominating petitions for candidates, independent or partisan, for election as officers of a municipal corporation having a population of less than two thousand must be filed with appropriate board of elections no later than 75 days before the general election. OHIO REV.CODE § 3513.251.

Nominating petitions for candidates for election as officers of a township are required to be filed with the board of elections not later than 75 days before the day of the general election. OHIO REV.CODE § 3513.253.

Nominating petitions for candidates for city, local, exempted village or county boards of education are to be filed no later than 75 days before the general election. OHIO REV.CODE §§ 3513.254 and 3513.255.

Nominating petitions for candidates, independent or otherwise, for the office of member of state board of education must be filed no later than 75 days before the date of the general election at which state board of education members are elected. OHIO REV.CODE § 3513.259.

However, nominating petitions of independent candidates for election as officers of a municipal corporation having a population in excess of two thousand must be filed no later than 75 days before the primary election immediately preceding the general election, that is, approximately 257 days before said general election. OHIO REV.CODE § 3513.252.

14. It is clear that the nominating petitions filing deadline imposed upon independent candidates prevents Cripps from appearing as an independent candidate on the November 5, 1985 general election ballot for the position of Tiffin City Finance Director. It likewise precludes plaintiffs Dickerson and Birch from exercising their franchise for Cripps for said elective office. As such, OHIO REV.CODE § 3513.252, as applied to Cripps, implicates plaintiffs' rights of expression and association, and Cripps' "important interest in ... the ... availability of political opportunity." *Lubin v. Parrish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974).

15. The Court is unpersuaded that OHIO REV.CODE § 3513.252 serves a compelling legitimate interest of the State. In any event, even if OHIO REV.CODE § 3513.252 served compelling legitimate state interests, it would have to operate in a manner which avoids unnecessary restriction or infringement of constitutional freedoms. *Anderson,* 499 F.Supp. at 137. "Statutes affecting constitutional rights must be drawn with 'precision,' ... and must be [narrowly] 'tailored' to serve their legitimate objectives." *Dunn v. Blumstein,* 405 U.S. at 343, 92 S.Ct. at 1003. A state must adopt the least restrictive means to achieve the asserted legitimate ends. "This requirement is particularly important where restrictions on access to the ballot are involved. *Illinois Board v. Socialist Workers Party,* 440 U.S. at 185, 99 S.Ct. at 990–91.

16. The Court is of the opinion that defendants have advanced no compelling reason for requiring Cripps, an independent candidate, to meet a nominating petition filing deadline 75 days before a partisan primary election in which he does not participate, and which deadline is 257 days before the succeeding general election. See *Anderson,* 499 F.Supp. at 138.

17. It appears to the Court that OHIO REV.CODE § 3513.252, in requiring an independent candidate such as plaintiff Cripps to file nominating petitions for political office at least 75 days before the primary election immediately preceding the general election, which filing deadline is 257 days before the general election, imposes a substantial burden on plaintiffs' fundamental rights and is not justified by any apparent compelling state interest.

18. After a date toward the end of February, no person seeking election to a political office of an Ohio municipality with a population in excess of two thousand may enter the race as an independent candidate and seek to have his name placed on the Ohio general election ballot. Thus, the direct impact of OHIO REV.CODE § 3513.-252's "early filing deadline falls upon aspirants for office." *Anderson*, 460 U.S. at 786, 103 S.Ct. at 1568.

The early filing deadline compels independent candidates to declare and to initiate their candidacies at least 75 days earlier than those of partisan candidates. Moreover, the filing deadline restricts Ohio voters such as plaintiffs Birch and Dickerson from seeking a candidate for Tiffin City Finance Director other than the nominees of the two major political parties. *Populist Party v. Herschler*, 746 F.2d 656, 660 (10th Cir.1984).

19. The Court finds that plaintiffs have demonstrated a substantial probability of success on the merits. Before plaintiffs' voting and associational rights may be burdened, Ohio must demonstrate a legitimate state interest or purpose served by the subject rule. To date, defendants have not advanced a legitimate state interest sufficiently compelling to support the filing deadline imposed by OHIO REV.CODE § 3513.252 and incorporated by reference in Article X of the Tiffin City Charter.

It cannot be gainsaid that plaintiffs have demonstrated that irreparable injury will result absent issuance by the Court of the requested preliminary injunction. Plaintiffs have no adequate remedy at law to redress the constitutional violations asserted. 19 FEDERAL PROCEDURE, L.Ed. § 47:16 (1983). Absent the requested injunction, plaintiff Cripps will be excluded from the November 5, 1985 general election ballot. Accordingly, plaintiffs Birch and Dickerson will not be able to exercise their franchise in favor of Cripps for the Office of Tiffin City Finance Director.

The Court perceives little, if any, harm which will befall others if the requested preliminary injunction is granted. Nor has any defendant suggested any such harm to others. The Court is unpersuaded by defendants' blanket assertion that Ohio voters and citizens have a strong interest in having Ohio's statutory provisions enforced.

In balancing the four criteria to be considered regarding a request for preliminary injunction, *In re DeLorean Motor Co.*, 755 F.2d at 1229; *Frisch's Restaurant, Inc.*, 759 F.2d at 1263, the Court is firmly convinced the equities weigh heavily in favor of plaintiffs. The Court further finds that, in any event, plaintiffs have met their burden with respect to each factor. The Court concludes that absent issuance of the requested injunction, plaintiff Cripps will surely suffer irreparable injury.

Finally, plaintiffs have demonstrated both serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to defendants if the preliminary injunction is issued. *Friendship Materials, Inc.*, 679 F.2d at 105; *In re DeLorean Motor Co.*, 755 F.2d at 1230.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that plaintiffs' motion for preliminary injunction be, and it hereby is, GRANTED.

## OPINION AND ORDER

This cause came to be heard upon plaintiffs' motion for summary judgment and defendant City of Tiffin's (Tiffin) opposition thereto as it relates to the City. Also before the Court is defendant Secretary of State's (Secretary) motion for summary judgment, plaintiffs' opposition, and defendant Secretary's reply thereto, defendant Secretary's motion to dismiss or, in the alternative, to join a necessary party and plaintiffs' opposition thereto, and defendant Tiffin's motion to dismiss and plaintiffs' opposition thereto. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 2201 and 2202.

Plaintiffs have brought this action under both the First and Fourteenth Amendments

to the United States Constitution and under 42 U.S.C. § 1983, seeking declaratory relief for alleged deprivation of certain constitutional rights pertaining to ballot access for a prospective independent candidate for political office and to associational and voting rights. Initially, plaintiffs named as defendants the Seneca County Board of Elections, four individuals in their respective official capacity as members of the Seneca County Board of Elections, and Sherrod Brown in his official capacity as Ohio Secretary of State. Plaintiffs later filed an amended complaint adding the City of Tiffin as a defendant.

Plaintiffs contend that the filing deadline established by Ohio Rev.Code § 3513.252, and adopted by reference in Article X of the Tiffin City Charter, is unconstitutional, at least as applied to the independent candidacy of plaintiff Jeremy Cripps (Cripps). Plaintiffs allege that the filing deadline violated plaintiffs' political, voting, and associational rights secured by the First and Fourteenth Amendments to the Constitution, equal protection rights when compared to other types of candidates and discriminates against plaintiff Cripps on the basis of his alienage in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendant Secretary's motion for summary judgment, in essence, agrees that there is no genuine issue as to any material fact, but argues that judgment should be entered in his favor for reasons in direct opposition with plaintiffs' position stated earlier.

As previously stated, there is no dispute as to any material facts. Plaintiff Cripps, a native of England, came to the United States in 1968. In 1972, he married a U.S. citizen. Cripps was absent from the country for a period of time, but since August of 1983 Cripps has resided in Tiffin, Seneca County, Ohio. In September of 1984, Cripps applied to the U.S. Immigration Service for the purpose of becoming a naturalized citizen. The Immigration Service scheduled Cripps for examination during January, 1985, which examination he took and passed. Thereafter, he was scheduled to take his oath of citizenship on March 15, 1985. On March 15, 1985, Cripps became a naturalized citizen.

In mid-January, 1985, Cripps decided to become an independent candidate for the office of Director of Finance of the City of Tiffin. The position of Director of Finance in Tiffin is an elected position from the city-at-large. Independent candidates do not appear on the ballot until the general election in November. Cripps had never been involved in any political activity with either the Republican or Democratic party and considered himself politically independent of either of said political parties.

Article XI, § 11.01 of the Tiffin City Charter requires that each elected officer of the City of Tiffin, which includes the Director of Finance, be an elector of said City. Ohio Rev.Code § 3503.01 lists the requirements necessary to qualify as an elector. Among the requirements is the necessity of being a citizen of the United States.

Article X, § 10.01 of the Tiffin City Charter adopts by reference Ohio Rev.Code § 3513.252 which, in part, provides:

> The nominating petitions of independent candidates for election as officers of a municipal corporation having a population in excess of two thousand ... shall be filed with the board of elections not later than ... the seventy-fifth day before the day of the primary election immediately preceeding such general election.

In regard to the election in which Cripps decided to participate, the seventy-fifth day before the day of the primary election fell on February 21, 1985. Therefore, in order for Cripps to meet the necessary filing requirements, he was obligated to file his nominating petitions with the Board of Elections by February 21, 1985. Only an elector could file said petition, and Cripps would not become a U.S. citizen, a necessary requirement for an elector in Ohio, until March 15, 1985.

On May 7, 1985, Cripps filed his nominating petitions with the Director of the Board of Elections. Cripps had met all the neces-

sary requirements which would entitle him to have his name placed on the November, 1985 general election ballot, except for Ohio Rev.Code § 3513.252 imposed filing deadline of February 21, 1985. The Seneca County Board of Elections met the evening of May 7 and voted to disallow Cripps' nominating petitions based solely on his noncompliance with the February 21, 1985 filing deadline. As a result of the Board's disallowance of Cripps' petitions, plaintiffs brought this action seeking preliminary injunction and declaratory relief. (Plaintiffs' motion for preliminary injunction was granted on September 13, 1985, requiring that Cripps' name be placed upon the November, 1985 general election ballot.)

Plaintiffs seek summary judgment and base their argument primarily on the decision of the U.S. Supreme Court in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). In that case, an Ohio statute required independent candidates for President of the United States to file a statement of candidacy and nominating petition no later than the seventy-fifth day before the day of the primary election immediately preceeding the general election, *Anderson v. Celebrezze, supra* at 783, 103 S.Ct. at 1567, which in this case was March 20, 1980. On April 24, 1980, petitioner Anderson announced that he was an independent candidate for President. Thereafter, on May 16, 1980, Anderson's supporters tendered a nominating petition and statement of candidacy to respondent Ohio Secretary of State, satisfying the substantive requirements for ballot eligibility. Respondent refused to accept the documents because they had not been filed within the time required by the Ohio statute. The District Court granted summary judgment for petitioners and ordered respondent to place Anderson's name on the

general election ballot, holding that the statutory deadline was unconstitutional under the First and Fourteenth Amendments. The U.S. Supreme Court sustained this decision.

Defendant Secretary, in his motion for summary judgment, contends that a proper interpretation of *Anderson* would support the constitutionality of the filing deadline for independent candidates for local office contained in Ohio Rev.Code § 3513.252. In essence, defendant Secretary argues that a correct analysis of the present situation, applying the balancing test propounded in *Anderson* would conclude that Ohio's interest in protecting its electoral process, and educating the voters, would be of sufficient importance to outweigh the rights of plaintiff Cripps seeking election to a local office, and any persons who would desire to cast their votes for Cripps. The Court disagrees with defendant Secretary's arguments and holds that Ohio Rev.Code § 3513.252 as applied to Cripps is unconstitutional. The Court will grant plaintiffs' motion for summary judgment for the following reasons.

The situation with which plaintiff Cripps was confronted, compared to that which petitioner Anderson faced, was virtually identical. As with candidate Anderson, candidate Cripps was faced with being refused access to the general election ballot for the sole reason that he filed his nominating petitions and statement of candidacy (as an independent candidate) at a date later than that allowed by Ohio Rev.Code § 3513.252. Because the situation in *Anderson* is so identical to that found in the present situation, this Court hereby adopts the Supreme Court's reasoning in holding that Ohio Rev.Code § 3513.252 as applied to plaintiff Cripps is a violation of the First and Fourteenth Amendments.[1] Defendant

---

1. Since we consider *Anderson, supra,* to be the lodestar, we quote below certain pertinent parts of the opinion:

   The impact of candidate eligibility requirements on voters implicates basic constitutional rights. Writing for a unanimous Court in *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 [78 S.Ct. 1163, 1170-71, 2 L.Ed.2d

1488] (1958), Justice Harlan stated that it "is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." In our first review of Ohio's electoral scheme, *Williams v. Rhodes,*

Secretary's only contention as to why the present case should be differentiated from that found in *Anderson* is that *Anderson* dealt with a national election, while the present situation deals with a local elected position. On page 3 of defendant Secretary's motion for summary judgment, filed with this Court on September 5, 1985, defendant Secretary argues:

It is true that in *Anderson* a similar Ohio filing deadline was found unconstitutional. However, there is a crucial difference between the facts of *Anderson* and cases such as the present one. *Anderson* involved independent candidacies for the offices of President and Vice-President of the United States, not candidates for local office.

The Sixth Circuit Court of Appeals addressed this precise argument in *Goldman-*

*Frankie v. Austin*, 727 F.2d 603 (1984). *Goldman* was decided after *Anderson*. In *Goldman-Frankie*, plaintiff was denied ballot access to run as a candidate for the Michigan State Board of Education. This, like the Director of Finance position for the City of Tiffin, was not a position of national importance. The Sixth Circuit, in *Goldman-Frankie*, held:

This Court is therefor compelled to again declare, in absolute terms, that the Michigan election laws, so far as they foreclose independent candidates access to the ballot, are unconstitutional.

Defendants urge that, even assuming the election laws are otherwise constitutionally deficient, Goldman-Frankie was not entitled to relief. Defendants assert that the *McCarthy* precedent is inappo-

---

393 U.S. 23, 30–31 [89 S.Ct. 5, 10–11, 21 L.Ed.2d 24] (1968), this Court explained the interwoven strands of "liberty" affected by ballot access restrictions:

"In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms."

As we have repeatedly recognized, voters can assert their preferences only through candidates or parties or both. "It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." *Lubin v. Panish*, 415 U.S. 709, 716 [94 S.Ct. 1315, 1320, 39 L.Ed.2d 702] (1974). The right to vote is "heavily burdened" if that vote may be cast only for major-party candidates at a time when other parties or other candidates are "clamoring for a place on the ballot." *Ibid.; Williams v. Rhodes, supra*, [393 U.S.] at 31 [89 S.Ct. at 10–11]. The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for likeminded citizens. *Anderson v. Celebrezze, supra*, 460 U.S. at 789, 103 S.Ct. at 1570, et seq.

It is clear, then, that the March filing deadline places a particular burden on an identifiable segment of Ohio's independent-minded voters. See *supra*, [460 U.S.] at 791 [103 S.Ct. at 1571]. As our cases have held, it is especially difficult for the State to justify a restric-

tion that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. "Our ballot access cases ... focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the 'availability of political opportunity.'" *Clements v. Fashing*, 457 U.S. 957, 964 [102 S.Ct. 2836, 2844, 73 L.Ed.2d 508] (1982) (plurality opinion), quoting *Lubin v. Panish*, 415 U.S., at 716 [94 S.Ct., at 1320].

A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties. *Clements v. Fashing, supra*, [457 U.S.] at 964–65 [102 S.Ct. at 2844–45] (plurality opinion). *Anderson v. Celebrezze, supra*, 460 U.S. at 792, 103 S.Ct. at 1572, et seq.

But both the burdens and the benefits of the respective requirements are materially different, and the reasons for requiring early filing for a primary candidate are inapplicable to independent candidates in the general election.

The consequences of failing to meet the statutory deadline are entirely different for party primary participants and independents. *Anderson v. Celebrezze, supra*, 460 U.S. at 799, 103 S.Ct. at 1575.

See also the Conclusions of Law in this Court's order of September 13, 1985.

site because those cases involved *federal* office whereas Goldman-Frankie was seeking a state office and the state constitution, specifically, Art. VIII § 3, mandated party nomination as the vehicle to ballot access for Michigan Board of Education candidates.

▉ The arguments are not persuasive. "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections."

*Goldman-Frankie, supra,* at 607. As the Sixth Circuit points out, the differentiation between *Cripps* and *Anderson* on the sole basis of local/national election arguments is not persuasive.

Therefore, the Court will grant plaintiffs' motion for summary judgment and will deny defendant Secretary's motion for summary judgment.

As a result of the Court's ruling stated above, the Court does not find it necessary to rule on the equal protection or discrimination charges also asserted by plaintiffs.

▉ Also before the Court is defendant Secretary's motion to dismiss or, in the alternative, to join a necessary party. Plaintiffs, in their opposition, correctly point out that this motion is moot due to the joining of defendant City of Tiffin through an amended complaint filed with this court on July 31, 1985. Therefore, the motion will be denied as moot. However, the Court is concerned with the reasoning of said motion in conjunction with the other motion that needs to be ruled upon, i.e. the motion of defendant City of Tiffin to dismiss. In essence, the City of Tiffin contends that they are not a proper defendant because the City does not have the power or authority to satisfy plaintiffs' demands. In defendant Secretary's motion to dismiss, which has been declared moot, the Secretary indicates that he is not a proper defendant because of the "home rule" concept, in that it is the power of chartered municipalities to regulate local self-government, which preempts state law. The plaintiffs correctly point out two principles which solve this dilemma. First, when a charter municipality acts through its charter to establish election laws and procedures, the county boards of elections are constrained by law to follow local charter provisions. *State ex rel Stanley v. Board of Elections of Cuyahoga Cty.,* 127 Ohio St. 204, 187 N.E. 733 (1933); *State ex rel Rose v. Ryan,* 119 Ohio App. 363, 200 N.E.2d 668 (Franklin Cty.1963). Second, where a chartered municipality does not adopt express provisions, but only makes reference to and incorporates the general laws of the state, the court must look to state election law to resolve the dispute at hand. *State, ex rel. Graham v. Board of Elections,* 60 Ohio St.2d 123 (1979). Interpreting these state holdings in conjunction with the instant case, all defendants before the Court are necessary parties.

THEREFORE, for the above stated reasons, good cause appearing, it is

ORDERED that plaintiffs' motion for summary judgment be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that the preliminary injunction heretofore issued be, and the same hereby is, now made permanent; and it is

FURTHER ORDERED that defendant Secretary of State's motion for summary judgment be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that defendant Secretary's motion to dismiss or, in the alternative, to join a necessary party be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that defendant City of Tiffin's motion to dismiss be, and the same hereby is, DENIED.